HUNT *&* als., *Petr's, versus* HUNT *&* als.

By R. S. c. 93, § 3, every illegitimate child shall be considered, as an heir of the person, who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate, but he shall not be allowed to claim, as representing his father or mother, any part of the estate of his or her kindred, either lineal or collateral; unless, before his death, his parents shall have intermarried and had other children, and his father, after such marriage, shall have acknowledged him as aforesaid, or adopted him into his family.

In a petition for partition of the father's estate, *it was held;* that the facts essential to be proved to allow an illegitimate child to inherit his *father's estate*, under this statute, were entirely distinct from such as would authorize him to inherit by *representation* of his father or mother from his lineal and collateral kindred : and

1st. That no illegitimate child could inherit the estate of *his father* as heir, unless the *written acknowledgment* required by this statute had been properly executed. Per SHEPLEY, C. J., and TENNEY and HOWARD, J. J. APPLETON, J., dissenting.

2. But that such child might inherit *by representation* of his father or mother from his lineal and collateral kindred, *without such acknowledgment*, if the parents had intermarried and had other children, and the father after such marriage had adopted the child into his family. *Held*, by APPLETON, J., that when such child could inherit by *representation* from his lineal and collateral kindred, he could, by § 3, inherit from his father.

The rights to an estate vested before the enactment of the Act of 1852, c. 266, must be determined by a legal and judicial, not Legislative construction of the laws in force at the time; and that Act of 1852, cannot alter them.

ON REPORT from *Nisi Prius,* HOWARD, J., presiding.
PETITION FOR PARTITION.

The Court were authorized to determine the facts and the law arising thereon.

The facts found were, that three of the petitioners were *illegitimate* children of Moses Hunt, the other was legitimate. The three respondents were his lawful children by his first wife.

After her death, while said Moses employed a housekeeper, he became the father by her of the three illegitimate children mentioned, and subsequently married her, and after such marriage became the father of the fourth above mentioned petitioner.

Moses Hunt died in 1849, seized and possessed of the several parcels of land described in the petition.

The petitioners always lived with him before and after his intermarriage, bore his name, and were treated like the other members of his family.

*Swazey,* for respondents, contended, that the three illegitimate children could take no part of the estate, as the father had made no acknowledgment *in writing,* as the statute required.

Nor could the statute of 1852, c. 266, have any legal effect on this case, for the construction of a statute is a judicial and not a legislative function. The estate here descended and became vested in the legal heirs of Moses Hunt long before the passage of this Act. The statute cannot be retroactive, neither can it so operate as to divest rights once established.

*Fessenden & Deblois* and *Baker*, for petitioners.

The facts in this case authorize the petitioners, who are illegitimate, to claim a share in the estate under c. 93, § 3, for its conditions have been complied with.

1. The parents intermarried and had other children.

2. The father, after such intermarriage, adopted them into his family.

Under this state of facts, a construction of the statute that would confirm the right to a claim " as representative of his father," and exclude the right to claim the estate of the father, is to us monstrous. It would allow a collateral, and reject a lineal right. The term *as representative of his father*, is intended to make him heir directly to his father, which is the immediate right, as well as to allow him to claim correlatively.

Again, there are other words which show this to have been clearly the intention of the statute. After reciting the above conditions is the following, " in ˙which case, such child and all the legitimate children *shall be considered as brothers and sisters, &c.*

The general scope and meaning of this statute was to make illegitimate children, adopted by the father, co-heirs with the legitimate children; and its scope and intention should be carried out. *Emily* v. *Caroline*, 9 Wheat, 381; *Pease* v. *Whitney*, 5 Mass. 380.

Again, this is peculiarly a *humane statute*, and should have a most liberal construction. 6 Bacon, Statute 7, p. 389; *Richards* v. *Daggett*, 4 Mass. 534, and 12 Mass. 383.

But should the Court doubt the intention of the Legislature by reason of any ambiguity of the language used, then they will look to c. 266 of Acts of 1852, as explanatory of the section under consideration. This last Act makes no new law, but declares what the law was.

" If it can be gathered from a subsequent statute in *pari materia*, what meaning the Legislature attached to the former statute, this will amount to a legislative declaration of its meaning and will govern the construction of the first stat-

ute." *U. S.* v. *Freeman,* 3 How. U. S. R. 556; *Bull* v. *Loveland,* 10 Pick. 13.

In construing statutes, the intention of the makers is to govern, although the construction may seem contrary to the letter of the statute. 3 Cowen, 89; 2 Pet. 662; 15 Johns. 358; 10 Pick. 235; *Henry* v. *Tilson,* 17 Verm. 479; 2 Sup. U. S. Dig. 808; *Brown* v. *Wright,* 1 Greenl. 240.

A statute may in some instances be expounded contrary to the words. 6 Comyn's Dig. Parliament, 252.

SHEPLEY, C. J. — Three of the petitioners being illegitimate children of Moses Hunt, deceased, claim as his heirs, to be entitled to a distributive share of his real estate.

Who are entitled to inherit as heirs of a deceased person, is in this State, to be determined only by the provisions of the statute in force at the time of his decease.

No rules of the civil or common law, further than they are adopted by the statute, can afford them the least aid. The rights of the petitioners must depend entirely upon the provisions of the statute, c. 93, § 3.

The first clause of that section determines very clearly, by the following words what facts are required to be proved, to enable an illegitimate child to inherit from the father or mother as an heir. "Every illegitimate child shall be considered as an heir of the person, who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate in the same manner as if he had been born in lawful wedlock."

There is no other provision of the statute intended to have any effect upon the rights of an illegitimate child to inherit as the heir to his father or mother. Every other clause of the section was inserted for a different purpose, which by the language used is clearly exhibited.

The language of the next clause is, "but he shall not be allowed to claim as representing his father or mother any

*Hunt v. Hunt.*

part of the estate of his or her kindred either lineal or collateral," without proof of other facts.

It is apparent, that it was intended to provide, that an illegitimate child might inherit as heir of the father or mother, while he could not inherit from a grand-father or mother, or from an uncle or aunt. From these he cannot inherit, as the third clause declares, " unless, before his death, his parents shall have intermarried and had other children, and his father after such marriage shall have acknowledged him as aforesaid, or adopted him into his family."

This clause surely was not designed to determine by what facts an illegitimate child should be considered as an heir to his father. The purpose was entirely different. It was to determine by what facts he should be regarded as an heir and capable of inheriting from lineal and collateral kindred. To use this clause or any part of it, to determine when he should inherit from his father, is to make use of it for a purpose wholly different from that for which it was enacted.

It is true, that it may authorize an illegitimate child, when so adopted into the family of the father, to inherit from lineal or collateral kindred, when he could not inherit from his father.

The substance of the argument against a literal construction admitting it, appears to be, that this would be contrary to the rules of the civil and common law; and absurd to permit one to inherit as heir to his father, and through him the estate of lineal and collateral kindred, when he could not inherit the estate of his father.

The statute fixes its own rules without any regard to the rules established by other laws, further than it adopts them. It may make one an heir to lineal or collateral kindred without allowing him to inherit from his father, as well as make him an heir to his father without allowing him to inherit from such kindred. The reason for such an enactment, may perhaps be sufficiently discerned to redeem it from the charge of absurdity. When a father has married

the mother and has had other children by her, and has adopted her former illegitimate child into his family, he has given full notice to his kindred, that he regards such illegitimate child as one of his children; and if they do not wish it to inherit from them, they will have opportunity to prevent it. And the right of the father to determine whether such child shall inherit any part of his estate, is preserved to him, and is made to depend upon his own pleasure to make a written acknowledgment of him. Circumstances may arise under the provisions of the statutes, in which it might be in furtherance of equality and apparent justice, that a father should place such a son in a condition to enable him to inherit from lineal or collateral kindred and not from himself. His mother may have property, and he will be entitled to inherit from her, when the father's former children by another wife would not. But whether sufficient reasons for such a difference can be perceived or not, when it is clearly made by a legislative enactment, it is not the province of a judicial tribunal to destroy it by a forced construction. It can only be disregarded by a construction of the section, which would give no effect to the words of the first clause requiring a written acknowledgment of the father signed in the presence of a competent witness to make an illegitimate child his heir, if he had adopted him into his family. While such an adoption is not by the statute made to constitute any part of the requirements to make him an heir of his father.

The construction contended for can receive no aid from the subsequent provisions of the section.

The next clause provides for another distinct matter; under what state of facts legitimate and illegitimate children shall be regarded as brothers and sisters and shall inherit from each other.

The last clause saves to the father and mother their right of inheritance as heirs to their children in like manner as if all had been legitimate.

Each of these clauses was designed to accomplish a spe-

cific purpose clearly exhibited and not obscurely provided for, but not including any intention to affect the right of an illegitimate child to inherit from its father. All the children are by the last clause placed on a footing of legitimacy for certain purposes named, not for all purposes.

In this case the essential fact is wanting to enable three of the petitioners to inherit as heirs to their father, that he has made no such written acknowledgment of them as his children as the statute requires.

The Act approved on April 21, 1852, although it may have been enacted for that purpose, can have no effect upon their rights. The titles of these parties to the estate of their father had become established beyond the power of any legislative body to alter them, before the enactment of that legislative declaration. Their rights must still depend upon a legal and judicial and not upon a legislative construction of the existing statute.

*Judgment for partition for
the share of Moses Hunt alone.*

TENNEY and HOWARD, J. J., concurred.
APPLETON, J., dissented.

Dissenting opinion by —

APPLETON, J. — The petitioners and respondents claim title as heirs of Moses Hunt. It was admitted, that the mother of the petitioners at the time of their birth, resided in the family of Hunt as his house-keeper; that after their birth she was legally married to him, and after such marriage, and during its continuance, had one child by him. The petitioners were born in his house, and were members of his family till his death. They were treated as his children, were called by his name, and were maintained by him and no difference was made by him between them and the respondents, his legitimate children. Upon these facts the question submitted, is whether they are entitled to their distributive share of the real estate of which said Hunt died seized.

In this State the statute of descents, R. S., c. 93, determines the rules of succession as to the legitimate and the illegitimate. It deduces the right of inheriting from paternity and defines the facts upon proof of which it shall be considered as proved, and when proved the illegitimate acquire by its provisions, the inheritable rights of legitimacy.

The third section of R. S., c. 93, relates to the heirship of illegitimate children, and provides for two classes of cases. The first embraces children between whose parents no marriage has taken place. In this case, no provision but for the lineal descent of the estate of the father or mother is made. By the first clause of this section it is enacted that " every illegitimate child shall be considered as the heir of the person, who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as the heir of his mother, and shall inherit his or her estate, in whole or in part, as the case may be, in *the same manner* as if born in lawful wedlock." The time when this acknowledgment is made is immaterial. The father may at any time make his illegitimate son his heir. The inheritance conferred is limited to the estate of the father and mother, and by the next clause in the same section, the illegitimate child is prohibited from taking any thing by representation, except on certain conditions. As there is no written acknowledgment in this case, the petitioners acquire no rights under this clause of the third section.

The latter clause of this section prescribes primarily the conditions upon which the illegitimate may claim the estate of the kindred of his father and mother, whether lineal or collateral. It enacts, that the illegitimate child thus acknowledged, " shall not be allowed to claim, *as representing* his father and mother, any part of the estate of his or her kindred, either lineal or collateral; *unless* before his death *his parents shall have intermarried and had other children,* and his father, *after* such marriage, shall have acknowledged

him as aforesaid *or adopted him* into his *family;* in which case *such child and all legitimate children* shall be considered as brothers and sisters, and on the death of either of them, intestate and without issue, the others shall inherit his estate and he theirs, as provided in the first section of this chapter, *in like manner as if* all the children had been legitimate; saving to the father and mother respectively, their rights in the estate of *all* the children, as provided in the first section, in like manner as if all the children had been legitimate." The clause in this section, relating to the conditions requisite for inheriting by representation, differs from the original report of the commissioners by the insertion of the words " *or adopted him into his family.*" As the bill was originally reported, the subsequent marriage of the parents, the birth of children after such marriage and the written acknowledgment of paternity in the presence of a competent witness, were required before the illegitimate child could claim, by representation, the estate of the kindred of his father or mother. But it might happen that marriage, birth of children, and adoption into the family, might have ensued and yet no written acknowledgment of paternity have been made. Was it the intention of the Legislature to provide for this class of cases, by rendering adoption into the family equivalent to the written acknowledgment, or to make legitimation more difficult by imposing the further condition of adoption into the family, without which the others would be of no avail. If it was their purpose, that neither subsequent marriage, birth of children and a written acknowledgment of paternity should suffice, but that something more was to be added thereto, then the usages of language required " *and,*" the conjunction of addition, instead of " *or*" which is used to mark an alternative. Had this change been made no doubts could have arisen. If using " *or,*" it be construed as *and,* then they have adopted an awkward and unusual mode of expressing the idea intended.

In construing a statute words should receive their ordinary

signification. "But whatever the intention of the Legislature was," remarks Lord CAMPBELL, in *Regina* v. *St. Leonard,* 14 Ad. & El. N. S. 343, "we must judge of it only from the words employed." The general rule is to construe words according to their ordinary and natural sense. *Regina* v. *Commissioners of Sewers,* 1 El. & Black. 694. *Regina* v. *Archbishop of Canterbury,* 11 Ad. & El. N. S. 483. But the Court will not put such a construction upon the words used, as would in effect substitute others in lieu of those used by the Legislature, upon a mere conjecture as to the supposed intention. *Ripton* v. *Hodgdon,* 1. Ad. & El., N. S. 84. "We cannot," says WIGHTMAN, J., in *Cox* v. *Lawrence,* 1 El. & Black. 517, "get rid of grammatical construction and adopt the suggestion of dislocating some words and introducing others." If then we regard the Legislature as having intended to use the words they employed in their usual meaning and according to their obvious grammatical construction; if we apply to the section under consideration the recognized principles of interpretation, then the right to inherit, as representing the father and mother, is conferred, when there has been a subsequent marriage of the parents, the birth of children after such marriage and a written acknowledgment of paternity, or when to the two first mentioned conditions there is added the adoption by the father of his illegitimate children into his family. In other words, the two first requisites being the same, the written acknowledgment of paternity is legislatively recognized as equivalent to adoption into the family.

The petitioners in this case are entitled to claim, as representing their father and mother, any part of the estate of his or her kindred lineal or collateral. Their father and mother have intermarried and since such marriage have had a child. Whether they have had one or more is immaterial, as by R. S., c. 1, § 3, it is provided that in the construction of a statute "every word importing the plural number may be applied and confined to the singular number as well as the plural." The reputed father has adopted the children

into his family, and adoption is the alternative for and the equivalent of the written acknowledgment, which is required to enable the illegitimate son to inherit his father's estate. The petitioners and respondents are to be considered as mutually entitled to inherit the estate of the kindred of their father by representation equally as if they were all legitimate.

While the petitioners are permitted *as representing their father*, to claim the estate of his kindred either lineal or collateral, can they directly inherit his estate ? Was it the intention of the Legislature, that illegitimate children should inherit by representation the estates of their father's kindred, whether lineal or collateral, and fail to inherit that of their father, as whose representatives alone they claim the estate of his kindred.

It is apparent that by § 3, less is required to enable an illegitimate child to inherit the estate of his father than that of his father's kindred. In the former case a written acknowledgment of paternity in the presence of a competent witness makes the child acknowledged the heir of the person thus acknowledging. In the latter the intermarriage of the parents, the subsequent birth of children after such marriage, the written acknowledgment of paternity or its equivalent, adoption into the father's family, are required before the illegitimate child can successfully claim the estate of the father's kindred. Without the latter clause, children who might claim the estate of their father could never inherit by representation. If the construction for which the respondents' counsel contends, were allowed, the illegitimate child might inherit by representation, and not lineally, against the obvious intention of the Legislature, which was to guard with more vigilance the rights of collateral than those of lineal inheritance.

When the illegitimate child claims by representation the estate of the lineal or collateral kindred of his father, that very claim involves and includes the idea of heirship. Claiming by representation is claiming derivatively. No one can

claim through one, to whom such claimant is not an heir. The person representing enters into the place, and succeeds to the rights of the person represented. The illegitimate and the legitimate, equally represent their father. Representation assumes paternity as having been established, and being established, the statute confers equal right to inherit upon legitimacy and illegitimacy. The illegitimate child inherits from and through his father, because, in each case, upon certain facts being proved, the law adjudges him his son and heir. If he claims as representing his father, it is because he is to be regarded as a son, and if a son to represent, he is equally a son to inherit. Representing the father, and through him inheriting the estate of others and yet not inheriting his estate would be absurd and contradictory. It would be to allow a collateral and remote claim, and to reject a lineal and direct right; to give to the illegitimate the inheritable rights of legitimacy as to all but the father, but as to him, to refuse and deny them.

The term "right of representation," *jus representationis*, used in the statute of descents, like most of the phraseology of that statute, as well as that of Wills, is derived from the civil law. By the provisions of that code, the heir is regarded as *una eademque persona cune defuncto.* He represents the person and estate of his ancestor and succeeds to his rights and obligations. His substitution for him is like the continued succession of corporate existence.

"Succession by law is the title by which a, man, on the death *of his ancestor*, dying intestate, acquires his estate, whether real or personal, by the *right of representation as his next heir.*" Halifax Analysis of Civil Law, 47. The fourth canon or rule of descent is, *that the lineal descendants in infinitum* of any person deceased shall *represent their ancestor ;* that is, shall stand *in the same place* as the person himself would have done, had he been living. 3 Cruise's Dig. 333. It is apparent, that representation is the result of and flows from heirship — and that consequently no one can represent who is not an heir. Whoever, there-

fore, can claim by representation is necessarily heir to the person represented, and as the petitioners, as his representatives, might have claimed what would have belonged to their father had he lived, so they may claim what in fact belonged to his estate as his heir — for if they are entitled to what might have been his but was not, much more are they to what was his.

The provision that "*such child* and *all* the legitimate children shall *be considered as brothers and sisters*, and on the death of either of them intestate and without issue, the others shall inherit his estate and he theirs, *as provided in the first section of this chapter, in like manner as if all the children had been legitimate,*" is important in elucidating the meaning of the Act. If they are to be considered *inter sese* as brothers and sisters, it is only because they are the children of common parents. If the rights of legitimacy are so far conferred, that the illegitimate can claim as heirs to their legitimate brothers and sisters — *a fortiori*, must it have been the legislative intention that they should claim as heirs to their father. If they are considered as brothers and sisters *in like manner* as if legitimate, they inherit by § 1, the estate of their father. They do not inherit *in like manner* as if born legitimate, if the legitimate inherit the parental estate, and the right to the same inheritance is denied to the illegitimate. If they do not inherit, it is only because not considered as legitimate brothers and sisters. But the statute imperatively requires that they shall be so considered, and consequently they must inherit the estate of their father.

The clause " saving to the father and mother, respectively, their rights in the estate of *all* the said children, as provided in the first section, in like manner as if *all* had been legitimate," leads still more conclusively to the same result. "*All the said children*" are placed on the footing of legitimacy. The father, by § 1, inherits the estate of his legitimate children, if they die without issue. But by this saving clause, the father equally inherits the estate of the illegiti-

mate as the legitimate children, if a compliance with the prescribed conditions is shown. Moses Hunt, upon the facts as admitted, would have inherited the estate of his illegitimate children dying without issue — but he would have inherited it only as their father and because his paternity had been established. As a father he would have inherited alike the estates of the legitimate and the illegitimate. If then, he could inherit the estate of his illegitimate child, could not such child inherit his? Was it the intention of the Legislature that the guilty father should inherit the estates of his illegitimate child, and to deny to the innocent child, the reciprocal right of inheriting that of his father? Is the benefit of the statute to accrue to the father alone and not to the son, for whose advantage, it was specially enacted? The father is not to be regarded in the anomalous condition of a father and yet not a father — of a father so that he may inherit the estate of the son — and not a father, when the son claims to inherit his estate.

The illegitimate may inherit the estate of his legitimate brother or sister, and they may inherit his — the father may inherit the estate of the illegitimate child and the illegitimate child the estate of his grandfather, by representation, yet, if the construction here suggested should not be adopted, the illegitimate child cannot succeed to the estate of his father, and if the legitimate child should die before the father, the inheritance which would descend to the illegitimate children, the father having deceased, would pass from them to the general heirs of the father.

The whole section must be construed together for the purpose of ascertaining by a comparison of one part with another what was the meaning of the Legislature. Upon such comparison we can have no doubt, that it was their intention to include in representation heirship to, as well as through the person represented, and to confer the full and entire inheritable rights of legitimacy upon the illegitimate, when the father and mother of such illegitimate, marry and have children and the father acknowledges his paternity in

writing in the presence of a competent witness, or by adoption into his family. The legitimation in either case is entire, not partial.

The law of succession to persons who die intestate, is founded on the presumed will of the deceased. It assumes that his wishes are in accordance with his duty and his natural inclinations, and they point to the child as the natural heir of the father. Consequently, by the law of all nations, the child succeeds to the paternal estate. The natural right of inheritance includes illegitimate as well as legitimate children, for it is the duty of parents to make provision for the support of both. But to inherit, the existence of the paternal relation must be proved, and when proved, the heirship of the son follows. *Pater est quem nuptiae demonstrant* is the rule of the common law. Hence, when a child is born out of wedlock, as " the child's father is not known, by order and judgment of law" he is called *filius populi.* The parentage being uncertain, this is deemed " an unlawful state of birth, disabling the party to succeed in inheritance." " Though the father afterwards marry the mother," says Godolphin, in his Abridgment of the Ecclesiastical Law, 478, " yet in the judgment of the common law it is still a bastard, but by the canon law it is otherwise." By the civil law, children born before marriage, are made legitimate by the subsequent marriage of the parents. Indeed, this legitimation is a privilege or incident so insuperably annexed to the marriage, that though both parents and children should refuse to waive it, the children would nevertheless be legitimate. The Code Napoleon establishes the legitimacy of children born out of wedlock, when their father and mother shall have legally acknowledged them before the marriage, or in the act of its celebration. The provisions of the statute under consideration seem manifestly intended to confer important rights upon the illegitimate.

" A thing," says THOMPSON, C. J., in *People* v. *Utica Ins. Co.* 15 Johns. 380, " which is within the intention of the makers of a statute, is as much within the statute as if it

were within the letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." The design of this statute was to confer legitimation upon the illegitimate. It designates the conditions upon which they may inherit collaterally. But it could not have been the intention of the Legislature, that the father might inherit the son and not the son the father — that the illegitimate and the legitimate should mutually inherit each others' estates and not that of their common parent — that the illegitimate should inherit the estate of their grandfather and not that of their father — that as heirs of their brothers they should acquire the very estate of their father, and be precluded from taking it by direct descent — that they should inherit mediately and not directly — that they should have the general rights of legitimacy as to every one, but the father who adopted them, but as to him alone they should be and remain illegitimate; yet such are the unquestionable results of a different construction from the one here insisted upon. Such results I cannot believe were ever intended by the Legislature.

The construction here proposed conforms most to the just and enlightened legislation, which induced a change of the law and is in entire accordance with that principle of interpretation by which a liberal construction is to be given to all remedial statutes.

That the true construction has been given to this section is further evidenced by the explanatory Act of 1852, c. 266. A declaratory law in a case where the meaning is doubtful is not to be disregarded. If it can be gathered from a subsequent statute in *pari materia* what meaning the Legislature attached to a former statute, this will amount to a Legislative declaration of its meaning and will govern the construction of the first statute. *U. S.* v. *Freeman*, 3 How. (U. S.) 556.

The facts necessary to establish the claim of the petitioners having been proved, they are entitled to partition as prayed for.