## MORGAN v. PERRY & A.

Children have and can have no vested rights as heirs in their father's estate while the father lives.

A statute altering the descent of intestate estates, which applies only to estates to be settled after its passage, is not retrospective.

Therefore a statute that should provide that " where, after the birth of an illegitimate child, his parents have intermarried or shall intermarry, and have recognized or shall, after such marriage, recognize such child as their own, such child shall inherit equally with other children, and shall be deemed legitimate," would not be objectionable as a retrospective law.

In the act of 1860, legitimizing children born before marriage whose parents afterwards intermarry, the legislature have plainly provided for future births, marriages, and recognitions; but that they intended to provide for those that were past is not sufficiently apparent, from the language they made use of, to warrant the court in giving to the statute that broad construction.

PETITION for partition, by James Morgan, as guardian of James M. Perry. The following facts were agreed:

The premises described in the petition are part of the estate of William Perry, late of Hopkinton, deceased, intestate. James M. Perry, the ward of the petitioner, is a son of William P. Perry, who died September 1, 1862, at about the age of forty-five years. Said William P. Perry was born an illegitimate son of said William Perry; but when

said William P. was about four or five years of age, said William Perry married the mother of said William P. and had other children by her; and said children, born after such intermarriage, or their representatives, are the petitionees in this case. Ever after the intermarriage of the parents of said William P., he was recognized by them as their own child. William Perry died in 1870. Upon these facts the petitioner claims that, under the act of July 3, 1860, chapter 2343, page 2249 of Pamphlet Laws—reënacted in General Statutes, chapter 161, section 15, page 232—William P. Perry became legitimate, and entitled to inherit equally with the children of said William Perry, born after the intermarriage of their parents, and that his ward, as one of the children and heirs of said William P. Perry, is entitled to an undivided interest in the share of the estate of William Perry, which would have been inherited by said William P. Perry had he lived until after the death of said William Perry. The petitionees claim that said William P. Perry having been born illegitimate, and his parents having intermarried about forty years before the passage of the act of 1860, that act did not affect his status, but he continued as before, the illegitimate son of his parents, and therefore his children are not entitled to any share in the estate of William Perry.

If, upon the foregoing facts, the court are of opinion that the petitioner is entitled to recover, judgment is to be rendered for partition; otherwise, judgment to be rendered for the petitionees for their costs.

*Morrison & Stanley*, for the petitioner.

What shall be the construction of the act of July 3, 1860, and how applied to the case found?

The natural import of the words, according to common usage, is to be taken, unless repugnant to acknowledged principles of State policy, or to the clear design of the enactment. *Robinson* v. *Tuttle*, 37 N. H. 248, and cases cited. "A statute is not to be construed according to technical rules, unless such be the apparent meaning of the legislature." *Robinson* v. *Tuttle*, before cited, 249; Kent's Com., vol. 1, p. 521. Words and phrases shall be construed according to the common and approved usage of the language. Gen. Stats., sec. 2, p. 40. What, then, is a fair construction of the language of section 15, chapter 161, General Statutes? The first clause plainly says, "where parents of children born before marriage afterwards intermarry,"—applicable, we submit, to *all children so born*, and to the intermarriage of all parents afterwards. We here find no distinctive "shall," "will," "may hereafter," nor any of that numerous class of words denoting exclusively a future idea, instead of which the word "where," equivalent, we submit, in the context, to wherever or whenever, and does away entirely with the future idea which the tense of the verb there used usually carries, and makes it universal as to time, a pre-requisite of certain results at whatever time performed, be it after the birth of said child. The second clause, "and recognize such children as their

own," is put in good, plain English, and, with a fair interpretation, means the recognizing of such at any time whatsoever after the before-mentioned marriage. The same phraseology appears here as in the preceding clause, and carries the same idea universal, both as to time and to persons. The object and general intent of the legislature are in all cases to be regarded in construing statutes. *Jones* v. *Gibson*, 1 N. H. 272 ; *Barnstead* v. *Alton*, 32 N. H. 253. The object of a statute is to be regarded, and the whole of it is to be taken together. *Barker* v. *Warren*, 46 N. H. 125 ; Kent's Com., vol. 1, p. 426, and cases cited. " The intention of the law-giver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction, or absurdity." Kent's Com., vol. 1, p. 426. " When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view ; and the intention is to be taken or presumed according to what is consonant to reason and good discretion." Kent's Com., before cited. Equity enters into the construction of statutes affecting the whole or a part. *Whidden* v. *Drake*, 5 N. H. 19 ; Black. Com., vol. 1, p. 91.

The intention of the legislature then becomes material. Let us apply the above tests, and see what that intention was.

The illegitimate, by the common law, were nobody's children, and forever remained so, laboring under all the disabilities attendant upon such a state, and that, too, by no fault of their own. Thus the innocent were made to suffer punishment, a penalty the desert only of the guilty ;—and when it was seen that the object of the common law was not reached, namely, to deter from the commission, and that the blow fell upon shoulders least of all deserving or capable of sustaining it ; when even-handed justice made us to feel that we were doing irreparable wrong, and increasing that disgrace which the illegitimate ever keenly feel,—then did the legislature carry out the intent of their constituents, break in upon the existing law, and put it in the power of all parents so situated to relieve their offspring from disability. The object, we submit, was to benefit all such children, the remedy to be universal. It ill becomes one to say that they intended to stop midway, and enact that only the children of those who shall intermarry after the passage of said act were to receive the intended benefit. Such is revolting to every principle of honor and justice. To say that those parents who had done right, who had married and acknowledged their child previous to the passage of the act, had thus, by obeying the requirements of all law, both human and divine, debarred their children (for if married previous there could be none valid after, except the first was dissolved), and placed them in a worse position than open prostitution of the parent would have done, is revolting and absurd. The construction given should lead to no absurdities in its results. Black. Com., vol. 1, p. 91 ; *Com.* v. *Loring*, 8 Pick. 370.

The intention, then, we submit, was just what they plainly say in the statute. They make two conditions precedent, to wit, marriage and

subsequent recognition : time was not otherwise made material—was not a part of the remedy proposed. And, were it necessary, we might with a good degree of consistency say, that though both the marriage and recognition were previous to the passage of the statute, yet that the child deserves the benefits proposed. But this case does not require the passing upon that question;—for the parents of Wm. P. Perry were married after his birth, and recognized him as their son subsequent to the passage of the statute—complying not only with the letter, but with the spirit and intention of the act. Such would be the interpretation, we submit, applying the rule laid down in *Scammon* v. *Tilton,* 23 N. H. 438. " It is a good rule, in the interpretation of statutes, to put yourself in the place of the law-giver, and suppose him to be asked how he meant the law which he was enacting should be understood." Our legislature have, in this statute, enacted the civil law as recognized in Scotland, France, and numerous other countries, touching the status of the illegitimate, as affected by the subsequent marriage of the parents. And we would call attention to their decisions upon this point, and to the principles upon which they are founded, as showing conclusively that time was not made material, and that the petitioner must necessarily come within the statute. For, if we take the law, we also take the reason upon which it is founded. With them, as with us, marriage is a civil contract, founded upon the consent of the parties. Both give the same definition of legitimate, to wit, " born in lawful wedlock." " Now in Scotland the child born before the marriage ceremony has been performed is legitimate—not because of a subsequent act of his parents, but because he is considered as born in lawful wedlock. The marriage is held to have preceded his birth, and, according to the doctrine and language of the civil law from which Scotland and other countries have borrowed this principle, he is considered as *non legitimatus, sed legitimus ab initio.* Nor is this a mere fiction of law and a technical refinement. Marriage in Scotland is a consensual contract, and perfected by consent alone. But this may be given, and the contract made, in two ways,—either *per verba de præsenti,* or by a promise *subsequente copula.* Now, in the latter case, the copula makes the previous promise a consent ; it turns the promise touching the future into a present consent. A child, then, born in the interval between the promise and the copula, would be legitimate ; for the copula would show that consent, and therefore a marriage had preceded his birth. But so does a marriage after the birth, for that raises the legal presumption that there was a consent before the birth and at the cohabitation. The cohabitation is held to have been a consent and a marriage ; the ceremony is only held as evidence of that previous consent and contract." Opinion in *Birthwhistle* v. *Vardill,* 9 Bligh 71–86. This reasoning then shows that the statute was intended to cover all existing cases, for it makes Wm. P. born legitimate, and, of course, entitled to the decree asked for.

And though the broadest ground here taken might be said to make the statute retrospective, yet it is not, as claimed by the petitionees,

unconstitutional and void, nor beyond the power of the legislature—for where are the vested rights of legitimate children ? What they are we are unable to perceive. For how can a right be said to be vested in a child which can be divested by the will of the parent, either by devising his property, giving it away, or parting with it as he sees fit—the whole, for instance, to the relief of Chicago—and the child has no right, either in law or equity, to complain or to restrain him ? Such a claim is, in our State, but the merest possibility, and hardly deserves the name of expectation.

But it is said that the construction asked for is making the statute retrospective.

This cannot be the result, for the parents of Wm. Perry were married before the passage, which is settled to be a civil contract, and so continued for years subsequent; and the case finds that they acknowledged him as their son until his death, some two years after its passage. And though authorities are numerous to the point that laws should never be considered as applying to cases which arose previous to their passage, unless the legislature have clearly declared such to be their intention, we reply that this case arose subsequent, not previous, and the intention was to cover just such cases as the present, and that in this case the requirements have been complied with according to the statute. And, also, that the authorities are well settled that even retrospective laws are not prohibited, either by the constitution of the United States or by those of the States, unless they impair the obligation of contracts, or tend to divest rights already vested, or are strictly *ex post facto*. Such statutes have been held valid, when clearly just and reasonable, and conducive to the general welfare, even though they might operate in a degree upon existing rights, as a statute to confirm former marriages defectively celebrated, or a sale of land defectively made or acknowledged. Kent's Com., vol. 1, p. 512.

We submit, then, 1. That a fair English construction gives this petitioner the benefit of the statute. 2. That the intention of the legislature was to benefit and reach this case. 3. That the construction asked for involves no contradiction or absurdity, neither does it make the statute retrospective. 4. That any other construction does involve absurdities in its results, is revolting, unjust, and inequitable. 5. That the case found is a substantial compliance with the spirit and letter of the statute, and that the petitioner is entitled to a share in the estate of William Perry.

*A. & F. A. Fowler*, for the petitionees.

The question presented in this case is, Did the act of July 3, 1860, operate retrospectively, and legitimize the bastard children of parents who had intermarried forty years before its passage ? We say it did not and could not so operate.

I. It was not the intention of the legislature to give the act under consideration a retrospective operation. There is nothing in its lan-

guage to indicate such an intention. Its words are,—" Where the parents of children born before marriage afterward intermarry and recognize such children as their own, such children shall inherit equally with other children under the statute of distribution, and shall be deemed legitimate." Laws of 1860, ch. 2343, p. 2249 ; Gen. Stats., ch. 161, sec. 15, p. 332.

It is an established rule in the construction of statutes, that the legislature will not be presumed to have intended that a statute should have a retrospective action, unless that intention is very clearly expressed. *Gilmore* v. *Shooter*, 2 Modern 310 ; *Gilmore* v. *Shuter*, 2 Levins 227 ; *Couch* v. *Jeffries*, 4 Burrow 2460 ; *Dash* v. *Van Kleeck*, 7 Johnson 477 ; *Calder* v. *Bull*, 3 Dallas 386 ; *Torrey* v. *Corliss*, 33 Me. 333 ; *Kennett's Petition*, 24 N. H. 139 ; *Colony* v. *Dublin*, 32 N. H. 434 ; *Rich* v. *Flanders*, 39 N. H. 304.

In this statute there is no indication that the legislature intended to have it retroact; its language is entirely consistent with the prospective operation thereof only. It is therefore to be construed as if the legislature had said,—Hereafter, where the parents of bastards intermarry and recognize them as their own children, they shall inherit equally with the other children of such parents, and be deemed legitimate. The court are not at liberty to presume that the legislature intended to make the law retrospective.

II. Had the legislature clearly intended and by its terms made the law retrospective, it would be manifestly unconstitutional and void when attempted to be applied to the case under consideration. Until the passage of the act of 1860, the intermarriage of the parents of William P. Perry subsequent to his birth had no effect upon his status. He was still a bastard, and could not inherit the property of his father. Under the laws of the State in force up to the passage of that act, the legitimate children of William Perry had a vested right to inherit the whole of his property in case he died intestate, so far as that intermarriage was concerned. For the legislature to attempt to make a marriage which had taken place forty years before operate to legitimize William P. Perry, and thereby deprive the legitimate children of William Perry of their legal and vested right under the laws to inherit his whole property, would be an obvious attempt to establish a new rule for the decision of civil causes, within the express prohibition of the 23d article of the bill of rights of the constitution of New Hampshire, as interpreted by frequent and uniform decisions of our highest court. *Merrill* v. *Sherburne*, 1 N. H. 213 ; *Woart* v. *Winnick*, 3 N. H. 481 ; *Roby* v. *West*, 4 N. H. 287 ; *Bristol* v. *New Chester*, 3 N. H. 534 ; *Dow* v. *Norris*, 4 N. H. 16 ; *Clark* v. *Clark*, 10 N. H. 386 ; *Gilman* v. *Cutts*, 23 N. H. 382 ; *Willard* v. *Harvey*, 24 N. H. 344 ; *Adams* v. *Hackett*, 27 N. H. 294 ; *Lakeman* v. *Moore*, 32 N. H. 413 ; *Rich* v. *Flanders*, 39 N. H. 314.

Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions

or considerations already past, must be deemed retrospective, unconstitutional, and void. *Society for Propagation of Gospel* v. *Wheeler*, 2 Gall. 105.

Nor is it necessary, to render the retrospective law unconstitutional, that it should operate on pending suits. It is equally obnoxious to the constitutional objection, if it affect an existing cause of action or an existing right of defence, by taking away or abrogating a perfect existing right, though no suit or legal proceeding then exists. If a right has become vested and perfect, a law which afterwards annuls or takes it away is retrospective, whether any action to enforce that right was in existence at its adoption or not. So, too, if at the time of its occurrence any transaction was inoperative to produce any legal effect, any law which should afterwards undertake to give a particular legal effect to that transaction, to the detriment of existing rights, would be unconstitutional and void. *Clark* v. *Clark*, 10 N. H. 386 ; *Dow* v. *Norris*, 4 N. H. 19 ; *Rich* v. *Flanders*, 39 N. H. 311, and authorities *passim*.

It is beyond the power of the legislature to create a remedy for acts and things which were not remediable by existing laws when they occurred or came into existence. Neither can they give to acts and things, which had no legal effect at the time of their occurrence, a legal effect, to the prejudice of the rights and interests of third parties. They can no more constitutionally enact that a past marriage shall operate to legitimize a bastard child, than they can provide that an act, innocent at the time of its commission, shall be esteemed criminal, and subject its perpetrator to punishment. *Towle* v. *Eastern Railroad*, 18 N. H. 547 ; *Clark* v. *Clark*, 10 N. H. 386.

Had the legislature in terms enacted that where the parents of bastard children had afterwards intermarried and recognized those bastards as their children, such bastards should be deemed legitimate, such an act would have been clearly unconstitutional within the adjudged cases. No construction can effect by indirection what it was not in the power of the legislature to accomplish directly.

SARGENT, J.   William Perry had an illegitimate son, William P. Perry ; and when the son was some four or five years old, his father married his mother, and ever after both parents recognized William P. as their own child, and had other children born after marriage. Both the father and this son were alive in 1860. In 1862, William P. Perry died, leaving James M. his son and heir ; and the father William died in 1870. This petitioner claims the right of William P. Perry to the estate of his father, as against the other children and heirs of William.

Before the act of 1860, William P. would not be an heir of his father. But in 1860, July 3, the following statute was passed by the legislature of this State : " Sec. 1. Where the parents of children born before marriage afterwards intermarry and recognize such children as their own, such children shall inherit equally with other children, under the statute of distribution, and shall be deemed legitimate." Sec. 2 repeals all acts inconsistent with the above provisions, and

provides that this act shall take effect from its passage. Ch. 2343, Laws of 1860.

The question is as to the construction to be given to this law. Was it intended to include all cases of those who had been born before marriage, whose parents had afterwards married and recognized them as children, or only those who should be thus born after the passage of the law? It is claimed that to give this law the construction first named would be to make it a retrospective law, one that would take away vested rights, and thus be unconstitutional.

But it is well settled, as well as any other principle of the common law, that every person, while he lives, has a right to do what he will with his own; that his heirs have no claim or right whatever to his estate until his decease. He may make a will, and give his property to one or another as he chooses; or the State may change the law for good reason, and provide that a set of relatives shall take by descent, entirely different from those who would inherit before, and no vested rights are touched; nor would the law be retrospective or unconstitutional, if it provided that the new set of heirs should take under the new law, in cases that should arise, in estates to be settled after the passage of the new law.

If the legislature should attempt to make a new law apply to the settlement of estates which had once been settled under the old law, and take for the new set of heirs the property which had already vested in the heirs under the old law, that would be clearly retrospective and unconstitutional.

But while a man lives he has no heirs, and it is not until his death that any heirs have or can have any vested rights in his property. In *Merrill* v. *Sherburne*, 1 N. H. 199, 214, in speaking of retrospective laws and vested rights, it is said,—" nor can acts of the legislature be opposed to these fundamental axioms of legislation, unless they impair rights that are *vested,* because most civil rights are derived from public laws; and if, before the rights become vested in particular individuals, the convenience of the State produces amendments or repeals of those laws, those individuals have no cause of complaint. The power that authorizes or proposes to give, may always revoke before an interest is perfected in the donee. The right of *femmes covert* to dower may be taken away at any period before the death of the husband, and so the right of the next of kin to a relation's estate, at any period before that relation's death." In such case there is no objection to the law, because it operates only in the future and takes away no vested right.

So in *Miller* v. *Dennett*, 6 N. H. 109, it was held that the law of 1809, which changed joint tenancies into tenancies in common, took effect upon a deed, dated in 1795, under which the grantees had entered and remained in possession until 1813, when one of the parties died; and it was held that his heirs were entitled to hold their share. Richardson, C. J., in the opinion, says,—" The statute applied to the deed in this case would take away no vested right  *  *  *  the acquisition of the whole estate by survivorship would have been (at the

passage of the law) in either nothing more than a hope or expectancy, like the expectation of a child to inherit the estate of a parent. The statute thus applied operates upon an existing estate, but not retrospectively within the meaning of the constitution. It can no more be considered a retrospective law than a statute altering the descent of intestate estates: this neither gives nor takes away any right or interest."

In continuing, he says,—"The application of the statute to a case where one joint tenant had actually taken the land by survivorship at the time the statute was passed  *  *  would be an instance of the very thing which the constitution intended to prohibit. Thus applied, it would take away a vested right." Chief Justice RICHARDSON thus assumes, for the purpose of illustrating the question then under discussion, what he evidently considered an axiom or self-evident first principle in law, that a statute altering the descent of intestate estates, which should apply only to estates to be settled after its passage, is not retrospective, or otherwise constitutionally objectionable.. *Stevenson* v. *Cofferin*, 20 N. H. 150.

And in *Loveren* v. *Lamprey*, 22 N. H. 434, a will had been made before the passage of a statute, and the maker of the will died after its passage: it was held that the statute took effect upon the will, because thus it could not affect any right that was vested before its passage. A will cannot take effect, or any rights be acquired under it, until the death of the testator. *Wakefield* v. *Phelps*, 37 N. H. 295; *Perkins* v. *George*, 45 N. H. 453; *Pierce* v. *Richardson*, 37 N. H. 306; *Annable* v. *Patch*, 3 Pick. 360; *Cushing* v. *Aylwin*, 12 Met. 169; *De Peyster* v. *Clendining*, 8 Paige 295; *Bishop* v. *Bishop*, 4 Hill 138.

Statutes that change or regulate the laws of descent, which provide who shall or shall not be the heirs to the estates of those who may die intestate after such change or regulation, or what shall be the construction and effect of wills, no matter when made, where the testator dies after the passage of the law, are not retrospective in their operation, because none can require any rights as heir at law, or as legatee or devisee under a will, until the decease of the testator or intestate.

In Maine, the legislature, by a resolve of March 19, 1821, made valid and legal a certain class of marriages which were not legal before. In *Brunswick* v. *Litchfield*, 2 Greenl. 28, it was held that this resolve was constitutional, so far as it was to take effect in the future, and that derivative settlements of paupers must be thereafter determined according to the new law, or as though the marriage had been valid originally, but that such derivative settlement thus gained could not operate to oblige the town, thus newly charged with the paupers' support, to pay for supplies furnished prior to the passage of the resolve. To the same effect is *Lewiston* v. *North Yarmouth*, 5 Greenl. 66. *Goshen* v. *Stonington*, 4 Conn. 210, is to the same effect;—and see *Carroll* v. *Carroll*, 20 Texas 731, 746; *Shelton* v. *Shelton, Adm'r*, 25 Georgia 636; *Hunt* v. *Hunt*, 37 Maine 333.

In Massachusetts, by their Revised Statutes of 1836, chapter 61,

section 4, it was provided that "where, after the birth of an illegitimate child, his parents shall intermarry, and his father shall after the marriage acknowledge him as his child, such child shall be considered legitimate," &c. In the Laws of 1853, chapter 253, section 1, was the following provision: "Where, after the birth of an illegitimate child, his parents have intermarried, or shall intermarry, and his father has acknowledged or shall after the marriage acknowledge him as his child, such child shall be considered legitimate," &c. *Monson* v. *Palmer*, 8 Allen 551.

In the statute of this State, which we are considering, the language is less explicit than in either of the statutes referred to in Massachusetts. There would seem to be no doubt that their law of 1836 applied only to births, marriages, and recognitions that should be subsequent to the law; while it is equally plain that their law of 1853 applied to all cases, past and future, and was equally free from constitutional objection there, and would have been under our constitution, so long as the law had and could have no force or effect until after its passage, and could not relate back to affect any right that had become vested before or at the time of its passage.

The only question is, What did the legislature mean by the language they used in constructing this statute? It is not very clear; but we are inclined to the opinion that they did not intend to make a law so broad and sweeping as that of Massachusetts, passed in 1853. If that had been their real intention, we cannot see any reason why they should not have used language equally broad, plain, and explicit. We think that such an intention on the part of the legislature is not sufficiently apparent from the language they used to warrant the court in giving to the statute so broad a construction.

*Judgment for the petitionees for costs.*