Board of Taxation
No. 6830

ESTATE OF FRANK E. KENNETT & a.

v.

STATE OF NEW HAMPSHIRE

February 28, 1975

*Cooper, Hall & Walker* and *C. Russell Shillaber (Mr. Shillaber* orally) for the plaintiffs.

*Warren B. Rudman,* attorney general, and *Charles G. Cleaveland,* attorney (*Mr. Cleaveland* orally), for the defendant.

LAMPRON, J. Appeal under RSA ch. 541 by the plaintiffs, members of a partnership doing business as The Kennett Company, from a decision of the board of taxation. RSA 71-B:12 (Supp. 1973). Plaintiffs first appealed to the tax commission (RSA 77-A:13) which upheld a determination of the director of the business profits tax division (RSA 77-A:15 I) that gains from the sales of real estate reported on their federal income tax return for the year 1969 were to be included and taxed as gross profits under RSA 77-A:1 III (c) for their fiscal year ending August 31, 1970. Plaintiffs thereafter requested that the board of taxation which replaced the tax commission, review that part of the tax commission decision which related to the retrospective application of the business profits tax. The board denied the request for lack of jurisdiction and also denied plaintiffs' motion for rehearing, whereupon the present appeal was instituted.

The basic facts are not in dispute. On November 8, 1968, plaintiffs granted the United States a 12-month option to purchase 338 acres of their land in Conway and Albany. The option was exer-

cised October 29, 1969, the deed was delivered and recorded January 13, 1970, and the purchase price was received February 4, 1970. Plaintiffs also granted to the United States, on February 18, 1969, a second option covering other parcels of its land holdings on the same terms and conditions as the previous one. This option was exercised on November 5, 1969, the deed was delivered and recorded on March 31, 1970, and the purchase price was received on October 10, 1970. The New Hampshire business profits tax was enacted effective April 22, 1970, to "apply to gross business profits earned since January 1, 1970". Laws 1970, 5:2 I; *see* "History" RSA 77-A:1, Vol. 1-A RSA at 450. Plaintiffs included in their federal partnership return for the fiscal year 1969 ending August 31, 1970, gains of $340,352 from these sales. These were not included in their state business profits tax return for the same period. The director revised their return to include a gain of $269,392 from such sales, resulting in an additional tax of $11,290 which plaintiffs paid and are seeking its refund.

The sole issue to be decided is whether taxation of the above gains as business profits under RSA ch. 77-A is a violation of article 23, part I of the New Hampshire constitution which prohibits retrospective laws, and also a denial of due process and of equal protection of the laws in violation of the fourteenth amendment to the Federal Constitution.

N.H. CONST. pt. I, art. 23 reads as follows: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes or the punishment of offenses." N.H. CONST. pt. II, art. 5 grants to the general court "full power and authority . . . to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within the said State; and upon all estates within the same . . . ." The resolution of that part of the issue which pertains to our State constitution is to be found in the interrelation of these two provisions.

This court in 1826 was called upon to interpret the provisions of article 23, part I of our State constitution and did so in the following manner: "It is evident from this article in the bill of rights, that there are different kinds of retrospective laws; for two species are here enumerated — retrospective laws for the decision of civil causes, and retrospective laws for the punishment of offenses." *Woart v. Winnick,* 3 N.H. 473, 474 (1826). The clause relating to the punishment of offenses was held to prevent the legislature from establishing a new rule for the punishment of an act already done.

Its object was to protect individuals against unjust and oppressive punishment. *Id.* at 476. Turning to "retrospective laws for the decision of civil causes", the court pointed out that a very different language is used in this clause and held that its object was "to protect both parties from any interference of the legislature whatever, in any cause, by a retrospective law." *Id.* at 477. It was intended to prevent the legislature from interfering with the judicial process by enacting laws regulating existing causes of action on their defenses. *Id.* 481.

More than a century later, this court, in *Pepin v. Beaulieu,* 102 N.H. 84, 89, 151 A.2d 230, 235 (1959), cited the following passage from this same *Woart v. Winnick,* 3 N.H. 473, 479 (1826), as to what constitutes a retrospective law pertaining to civil matters. "[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . ." is such a law. This same test was recently reiterated in *State v. Vashaw,* 113 N.H. 636, 312 A.2d 692 (1973).

N.H. CONST. pt. II, art. 5 confers on the legislature the exclusive power to impose and levy taxes. This power to allocate a division of public expense among the members of the community is an attribute of sovereignty. *Morrison v. Manchester,* 58 N.H. 538, 549 (1879); *Hampton v. Marvin,* 105 N.H. 34, 36, 193 A.2d 441, 443 (1963). In exercising its power of taxation, the legislature decides the wisdom and practicality of each tax to be imposed free from interference by the judiciary. *Opinion of the Justices,* 110 N.H. 117, 122, 262 A.2d 290, 294 (1970). In performing its function to tax, the legislature must necessarily examine and consider the nature of the possible subjects of taxation. Research by its committees can antedate by many months the final adoption of a particular tax measure. The equitable imposition of a tax may dictate that provision be made to measure it by income generated before its effective date.

The business profits tax (RSA ch. 77-A) was proposed in a modified form by a citizens task force created by the legislature in May 1969. Laws 1969, ch. 24; *Opinion of the Justices,* 110 N.H. 117, 262 A.2d 290 (1970). In submitting its report on January 7, 1970, its chairman stated that more than 300 citizens of New Hampshire spent many months in a comprehensive study of the State's government. House bill 1 (1970) proposing a business profits tax was introduced on March 25, 1970, the opening day of a special session of the legislature called for the specific purpose of considering the

recommendations of the citizens task force. N.H.H.R. Jour. 1, 23 (1970). The present business profits tax law was adopted effective April 22, 1970, to "apply to business profits earned since January 1, 1970". Laws 1970, 5:2 I.

RSA 77-A:1 properly adopted as its definition of gross business profits taxable to a partnership "the amount shown as 'ordinary income' . . . plus the amount shown as 'payments to partners — salaries and interest' plus the net amount of any gains from the sale of capital assets of the partnership" which is shown on its "United States partnership return of income". *Shangri-La, Inc. v. State,* 113 N.H. 440, 442, 309 A.2d 285, 286 (1973). It is not disputed by the plaintiffs that for federal tax purposes the sales in this case occurred on January 13, 1970 and March 31, 1970, when the deeds were delivered to the purchaser and recorded. Rev. Rul. 69-93, Cum. Bull. 1969-1, 139. Hence plaintiffs' gains or business profits from those sales were realized or "earned" on these dates. *Altsuler v. Peters,* 190 Neb. 113, 123-24, 206 N.W.2d 570, 577 (1973); *see* "History" RSA 77-A:1, Vol. 1-A RSA at 450.

This court held in *Shangri-La, Inc. v. State supra* that the appreciation in a capital asset which occurred between 1952 and April 28, 1970, became a realized gain when it was sold on the latter date which was taxable as a business profit under RSA 77-A:1. This levy under a statute which became effective April 22, 1970, was held not to be within the prohibition of retroactive laws. contained in N.H. CONST. pt. I, art. 23.

Plaintiffs seek to distinguish *Shangri-La* from the present case on the ground that the legislature never intended to impose the business profits tax on single-event sales transacted prior to its enactment. We hold, however, that by specifically defining the partnership income subject to the tax as that shown on its federal return, the legislature wanted to foreclose the necessity of distinguishing between the different sources of income included in the return. It thus sought to avoid the complexities of enforcement which would result if each type of income constituted a class of its own. *See Hayes v. LeBlanc,* 114 N.H. 141, 146, 316 A.2d 187, 189 (1974); *Tiedman v. Johnson,* 316 A.2d 359, 364-65 (Me. 1974); *Katzenberg v. Comptroller of Treasury,* 263 Md. 189, 198, 282 A.2d 465, 472 (1971). The tax is not on gains as a distinct item, but rather a tax on net income (*Opinion of the Justices,* 111 N.H. 136, 140, 276 A.2d 821, 823 (1971)) measured by the yardstick of the different categories of income included in the partnership federal return for the year in question which ended August 31, 1970, in this case. *See United States v. Basye,* 410 U.S. 441, 457 (1973).

The legislature manifested in express terms its intent that the business profits tax was to apply to gross business profits earned since January 1, 1970. Plaintiffs' gains were realized when the deeds were delivered to the United States on January 13 and March 31, 1970. Such income, at least in the taxable year in which it was earned, cannot be said to have acquired such a vested status as to place it beyond the ambit of an income tax statute intended to reach it. *Morgan v. Perry*, 51 N.H. 559, 566 (1872); *Bourque v. Adams*, 93 N.H. 257, 259, 40 A.2d 582, 584 (1945); *see Penn-Dixie Cement Corp. v. Kizer*, 194 Tenn. 412, 250 S.W.2d 904 (1952); *Shanahan v. United States*, 447 F.2d 1082 (10th Cir. 1971); *In re Freedomland, Inc.*, 480 F.2d 184, 191 (2d Cir. 1973); 37 Taxes 407, 412 (1959).

The sovereign, broad, and exclusive power of the legislature to levy taxes is involved. There is need of a reasonable period of time for the legislature to choose a subject of taxation, introduce a bill, submit it to committees, and obtain its adoption. Given the further fact that taxation is a function of paramount importance as the essential means of supporting the government by apportioning its costs among those who must support it, we hold that RSA ch. 77-A, enacted April 22, 1970, whose tax is to apply to gross profits earned since January 1, 1970, cannot be considered under the circumstances of this case to be so "highly injurious, oppressive and unjust" as to violate article 23, part I of our State constitution. *Shangri-La, Inc. v. State*, 113 N.H. 440, 443, 309 A.2d 285, 288 (1973); *see Hayes v. LeBlanc*, 114 N.H. 141, 146, 316 A.2d 187, 189 (1974); *Kent v. Gray*, 53 N.H. 576, 579 (1873); *Purvis v. United States*, 501 F.2d 311, 313 (9th Cir. 1974).

Plaintiffs also contend that the tax imposed on their gains deprives them of due process of law in violation of the fourteenth amendment to the Federal Constitution. They analogize the tax imposed on the income from their two sales of real estate to a gift tax enacted and imposed after the gift has been completed. It is well established federal tax law that mere retroactivity of a statute does not render it unconstitutional. *Welch v. Henry*, 305 U.S. 134 (1938); *Picchione v. C.I.R.*, 440 F.2d 170, 173 (1st Cir. 1971). The theory underlying the gift tax doctrine against retroactivity is that it must be assumed that the taxpayer would not have made the gift of his property if he had known it would have tax consequences. *Nichols v. Coolidge*, 274 U.S. 531 (1926); *Untermeyer v. Anderson*, 276 U.S. 440 (1927). However, this presumption has not been carried over to a tax on income. "An income tax is levied upon the proceeds of an 'involuntary act', that is, it is generally assumed that

a taxpayer will generate income, rather than refrain from so doing, irrespective of the imposition of a tax upon that income". *First Nat'l Bank v. United States,* 420 F.2d 725, 729 (Ct. Cl. 1970); *Shanahan v. United States,* 447 F.2d 1082 (10th Cir. 1971). The tax imposed in this case cannot be said to be so arbitrary and capricious as to deny to the plaintiffs due process of law.

Finally plaintiffs argue that the tax which they were compelled to pay constitutes a denial of the equal protection of the laws. They maintain that because their transactions do not qualify for the privilege provided for installment sales of paying the tax on installments as received, there results an unreasonable discrimination. In both of these instances, the gain or profit realized is taxed in the year it is received. This classification is not arbitrary or unreasonable as it is based on a distinction which bears a fair and substantial relation to the object of the legislation. *Shangri-La, Inc. v. State,* 113 N.H. 440, 443, 309 A.2d 285, 288 (1973); *Kellems v. Brown,* 163 Conn. 478, 490, 313 A.2d 53, 60 (1972), *appeal dismissed,* 409 U.S. 1099 (1973); *United States v. Maryland Sav. Share Ins. Corp.,* 400 U.S. 4, 6 (1970).

*Appeal dismissed.*

KENISON, C.J., and GRIMES, J., did not sit; the others concurred.