Merrimack
No. 79-185

STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF NEW HAMPSHIRE

April 23, 1980

*Cleveland, Waters & Bass* and *Robert T. Clark,* of Concord (*Howard J. Zibel* orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch,* of Manchester (*Joseph A. Millimet* orally), for the defendant.

GRIMES, C.J. The issue in this case is whether a legislative appropriation to the defendant trustees of "a sum sufficient to provide a salary increase of 7 percent for university system employees" mandated a 7 percent salary increase for all system employees. We hold that it did.

In 1978 the legislature, not having timely enacted a budget for fiscal years 1978 and 1979, passed a joint resolution making temporary appropriations to provide pay raises for State and university system employees. Laws 1978, ch. 2. It appropriated "to the trustees of the University of New Hampshire system a sum sufficient to provide a salary increase of 7 percent for university system employees." Upon receipt of the funds, the trustees chose to award merit increases to certain of its employees. Some of the employees of the system, however, did not receive any increase, while others received less than 7 percent.

The plaintiff is the exclusive representative, selected pursuant to RSA ch. 273-A, for certain clerical and service personnel employed in the university system. On behalf of the employees within the bargaining unit who did not receive a 7 percent salary increase, the plaintiff brought an action for a declaratory judgment seeking a determination that a 7 percent increase was mandated for every employee by the language of the appropriation.

Following a hearing, the superior court found that the legislature had followed a long-standing practice of giving the university system a lump sum for raises and allowing the trustees to distribute it to the employees whom they deemed appropriate. The Trial Court (*Johnson,* J.) found that there was no language used in the 1978 resolution showing an intent not to follow the "long standing" practice. Accordingly, it ruled that the legislature intended to permit the trustees to continue the practice of merit raises with respect to the appropriation in question. The plaintiff appealed.

■ In any case involving the interpretation of a statute, the starting point must be the language of the statute itself. *Lewis v. United States,* 100 S. Ct. 915 (1980); *Corson v. Brown Products, Inc.,* 119 N.H. 20, 23, 397 A.2d 640, 642 (1979). The language of

Laws 1978, ch. 2 is, absent extrinsic evidence, clear and simple: "[T]here is hereby appropriated to the trustees of the University of New Hampshire system a sum sufficient to provide a salary increase of 7 percent for university system employees." Nothing on the face of this statute indicates a legislative intent that the funds appropriated thereby were to be used for anything but a 7 percent increase for all system employees.

In the preceding section of the resolution, the legislature had made an appropriation for a 7 percent pay increase for all *State* employees as contrasted to university system employees. In that section, the following language was used: "The salaries otherwise authorized by [certain statutes] shall be increased by 7 percent of the amount specified by those sections . . . ." The trustees argue that this language clearly gave each State employee a 7 percent pay raise but that, in contrast, the language of the resolution relating to the university system was an appropriation to "the trustees" to provide "a *sum* sufficient to provide a salary increase of 7 percent . . . ." (Emphasis added.)

The trustees further argue that the university system maintains its own pay scales and that historically it has exercised a free rein in determining pay raises, not on the basis of cost of living but on the basis of merit and the market value of the services rendered. They contend that the appropriation was intended to make available a lump sum which was computed in terms of a 7 percent pay raise but which would be handled by the trustees in accordance with their own method of determining raises. Under the university system, not all persons would receive a raise or the same percentage raise.

As we have elsewhere observed, in construing a statute, this court looks "to both legislative intent and the objectives of the legislation." *Nazzaro v. Merrimack School Dist.*, 118 N.H. 287, 290, 385 A.2d 230, 232 (1978). The purpose underlying the resolution was to provide economic relief to university system employees because of the increase in the cost of living. The university's method of awarding pay increases did not give consideration to this.

We conclude, therefore, that the difference between the language used in the resolution in regard to State employees and that relating to university employees does not negate an intent that all university employees receive at least a 7 percent raise. The language of the resolution would provide at least a 7 percent raise for everyone and the trustees, if they so wished, could provide

additional raises based on the system's merit plan. The difference in language does not convince us that the legislature intended anything but to guarantee that all employees, State and university alike, would receive a 7 percent across-the-board increase, albeit with the understanding that the trustees, out of other funds available, could do whatever they wished regarding merit raises.

The legislative history is consistent with this interpretation. During the debate in the House of Representatives, Representative Tucker, Chairman of the Appropriations Committee, in response to the question whether some employees in the university system were paid out of funds generated by fees charged for services, responded:

> I understand . . . that by the wording of this resolution any employee of the university is entitled to a seven percent raise but that that pay raise would come from whatever funds are customarily used to pay that employee. . . .

N.H.H.R. JOUR. 17 (1978). Beyond this, Representative Scammon, in his question, indicated that he understood that the "seven percent pay raise for the university system refers to all university employees." Thus, during the exchange before the house, both representatives indicated their understanding that the resolution provided a 7 percent raise for all university employees. The House Journal reveals that no one else questioned that interpretation.

The Senate Journal shows no statements that are necessarily inconsistent with this interpretation but contains some which are consistent with it. Senator Rock, in explaining that he had prepared a continuing resolution, stated that everyone was concerned "with . . . the financial difficulties of our state employees and those of the university system" and that his resolution "would include an immediate pay raise for all state employees at the level of 7 percent effective with the June 14th pay period." N.H.S. JOUR. 3415-16 (1977). This statement shows concern for hardship due to the rise in the cost of living, draws no distinction between State and university system employees and gives the impression that a 7 percent raise would be provided to alleviate that hardship for all employees.

This view of the legislative intent is further buttressed by remarks made on June 13, 1977, during the course of debate upon the continuing resolution. Although inexplicably left out of the

reported volume of the Senate Journal for that date, at trial the parties presented page proofs revealing the following explanatory remarks of Senator Trowbridge, Chairman of the Senate Finance Committee:

> [I]t is cheaper to go 7% flat. You just get [*sic*] it let us say you are making $100 to make it simple. On July 1 you would get $107 and you would get $107 throughout the biennium. The same is true for the University.
>
> Senator Monier: Is this a different raise or is it including the raise the trustees get?
>
> Senator Trowbridge: Senator Rock says that they didn't give a raise for the biennium year coming yet and it will be the raise. Now they don't necessarily get straight across the board because the trustees have a merit system and it is footnoted only for raises. It will be their raise package that they can give according to their own formulas.

Senator Trowbridge, in answer to a further question regarding cost, stated:

> We calculate for them to make up what they may need and just what they did not get in operating funds . . . . We did not give a cost of living on operating expenses— fuel, food, postage, that kind of thing to the University at all. I think we satisfy our dowers [*sic*] better by saying it is for pay raises . . . and that the school will have to pick up the cost of the extra operating expense.

It is clear from the senator's example of the $100 and $107 that the legislators understood that there would be a 7 percent across-the-board increase and that "the same is true of the university." His next statement concerns the statement attributed to Senator Rock to the effect that university system employees would not necessarily get "straight across the board because the trustees have a merit system . . . ." However, his remarks do not necessarily rule out the interpretation that the legislature intended at least a 7 percent raise system-wide. The trustees could give further increases based on merit and market value in addition to the 7 percent across the board; this would be consistent with Senator Trowbridge's statement.

Such a conclusion is further supported by the following exchange:

> Senator Trowbridge: We are recommending 7 percent across the board.

> Senator Hancock: For the University and State employees?

> Senator Trowbridge: Right, a one time shot. . . .

N.H.S. JOUR. 2474–75 (1977).

The trial court put substantial weight on the prior practice with respect to pay raise appropriations for the university system. It is true that before 1974, the university trustees had received lump sum appropriations which they had distributed to their employees as they deemed appropriate. The trial court understandably relied on this prior practice and found no "clear legislative intent not to follow the long standing practice. . . ." The most recent practice, however, followed since 1974, has been to the contrary. The legislature has on occasion expressly provided for across-the-board increases and on other occasions, the language has been so interpreted by the trustees. It seems to us that this more recent history and practice is more instructive than the more distant history in shedding light on the legislative intent.

█ We conclude therefore that the continuing resolution Laws 1978, ch. 2 mandated a 7 percent across-the-board increase for all university system employees.

*Appeal sustained; remanded for further proceedings consistent with this opinion.*

All concurred.