Hillsborough
No. 83-456
No. 83-459

CAGAN'S, INC.

v.

NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION

PANCO, INC.

v.

LLOYD M. PRICE, COMMISSIONER

March 18, 1985

240

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*James F. Raymond* on the brief and orally), for the plaintiff Cagan's, Inc.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Daniel W. Sklar* and *David A. Sears* on the brief, and *Mr. Sears* orally), for the plaintiff PANCO, Inc.

*Gregory H. Smith*, attorney general (*Betsy S. Westgate*, assistant attorney general, on the brief and orally), for the State.

SOUTER, J.   These cases come to us on interlocutory transfer from the Superior Court (*Dunn*, J.) under RSA 491:17. Each plaintiff taxpayer is an operator of vending machines that sell, among other things, candy, snacks and soda prepackaged by the taxpayers' suppliers. Cagan's, Inc. contested the assessment of meals taxes under RSA chapter 78-A on certain of such sales. PANCO, Inc. claimed a refund for taxes said to have been paid erroneously on certain of such sales. After the commissioner of revenue administration rejected the taxpayers' positions, each appealed under RSA 78-A:13 to the superior court, which transferred the questions raised.

Both plaintiffs raise two questions:

1. To be a "taxable meal" under RSA 78-A:3, X(c) (Supp. 1983), must a "meal" as defined in RSA 78-A:3, X(a) be prepared by the restaurant that serves it? The answer is no.

2. Would taxation under RSA chapter 78-A of the sale from a vending machine of snacks prepackaged by the seller's suppliers violate State and Federal Constitutional standards, when sales of identical snacks available on the shelves of supermarkets and other stores are not taxed? The answer is that such taxation would violate the State Constitution.

Cagan's raises two further questions:

3. Are sales of snacks from vending machines located in non-public areas of a post office or police station exempt under RSA 78-A:3, X(c)(3) from meals taxation, as meals furnished to inmates and employees of a governmental institution? The answer is no.

4. When a regulation of the department of revenue administration erroneously did exempt sales described in question 3, may the department tax such sales made before the repeal of the erroneous regulation? The answer is no.

The parties have filed stipulations and do not dispute the facts. Each taxpayer sells beverages and food through vending machines. The taxpayers' suppliers prepackage some of the beverages, although some of the taxpayers' machines mix beverages themselves. The taxpayers' suppliers prepackage some of the food, such as candy, chips and snacks. The taxpayers prepare and package some sandwiches themselves.

RSA 78-A:6, II (Supp. 1983) imposes a tax on certain meals. A taxable meal is "any meal for which a charge is made that is purchased from a person in the business of operating a restaurant . . . ." RSA 78-A:3, X(c) (Supp. 1983). "Meal" means "any food or beverage . . . prepared for human consumption and served by a restaurant . . . ." RSA 78-A:3, X(a). "Restaurant" includes a "food vending machine, and any other . . . establishment where meals are served . . . such as convenience stores . . . or supermarkets." RSA 78-A:3, X(b) (Supp. 1983). Thus a taxable meal is one prepared for human consumption and served by a restaurant, for which the restaurant makes a charge.

In addressing the first of the questions transferred, both taxpay-

ers take the position that food is not "prepared" within the meaning of the statute, and is not taxable, unless it is prepared by the restaurant taxpayer itself. The taxpayers regard the meals tax as a variety of value added tax, requiring a value to be added by the taxpayer through the act of preparing the food. Consequently, they maintain that when they use their vending machines to sell a snack that their suppliers have prepackaged, they are not selling food that they have prepared, and the food is therefore not a taxable meal.

The department has taken the contrary position, that food is sufficiently "prepared" within the meaning of the statute if it is prepared by anyone. On this view, such prepared food therefore includes food prepackaged before reaching the operator of the restaurant. Consequently, when a restaurant, including a vending machine, serves and sells food that is packaged at the time it reaches the operator of the restaurant, a taxable meal changes hands.

The department does not take the position that all sales of prepackaged snacks are taxable meals, however. Taxability requires that a restaurant "serve" the snack. It is clear from the definition of "restaurant" that a vending machine "serves" prepackaged food as a matter of law when it dispenses it. The department takes the position that any other variety of restaurant serves such prepackaged food if its employee hands the package to a customer. Conversely, the department submits that when a customer of a supermarket takes prepackaged food from a shelf or bin there is no element of service, and for that reason no taxable meal changes hands. The result of this reasoning is a taxable meal when a customer buys a candy bar from a vending machine, but no taxable meal if he takes the candy bar from the shelf of a supermarket and pays for it on his way out.

Cagan's never accepted the department's position, and calculated its tax on its own view of the law. It paid a tax on the sales of beverages that its machines mixed and on sales of sandwiches that it had prepared and packaged itself. It paid no tax, however, on the sales of the wholly prepackaged foods and beverages. When the department audited Cagan's for the two years 1980 and 1981, it calculated taxes to be due on the latter sales and assessed a deficiency, with interest.

PANCO, on the other hand, originally accepted the department's view and paid a tax on all sales of prepackaged food from its machines in 1980 and 1981. However, when it learned that the department did not claim a tax on sales of the same items in supermarkets and other establishments that could fall within the definition of a restaurant, it disputed the tax on the prepackaged food and claimed a refund of what it had paid.

Cagan's has a further dispute with the department. RSA 78-A:3, X(c)(3) exempts from taxation "meals served or furnished on the premises of any institution of the state, political subdivision of the state, or of the United States, to inmates and employees of the institutions [sic]." Before October 15, 1981, the department interpreted this exemption by a rule that "[m]eals served on the premises of a unit of government . . . to inmates and employees are not subject to tax." DEPT. REV. ADM. REG. 701.09(c)(5) (repealed). The department replaced this regulation by a new one effective on October 15, 1981, which took a narrower view of the exemption, confining it to "[m]eals served on the premises of, and to the residents or employees of . . . a federal, state or county prison, reformatory or mental hospital having confined residents . . . ." DEPT. REV. ADM. REG. 701.09(c)(5) (now codified as N.H. ADMIN. RULES, REV 702.02(d)).

Cagan's had relied upon the earlier regulation to exempt sales from machines placed in the non-public portions of the police station and post office in Concord, and had paid no tax on such sales for 1980 and 1981. In its audit, the department applied the new regulation to all sales in those tax years, even those antedating the replacement of the regulation, and assessed a deficiency accordingly.

With this background, we consider the issue raised by the first question transferred: whether a meal is prepared within the meaning of the statute, and hence can be taxable, when it has been entirely prepackaged by the restaurant's supplier. The language of the statute, taken alone, does not settle the matter. The statute describes a meal as "prepared for human consumption and served by a restaurant." Whether "by a restaurant" modifies "prepared" as well as "served" is subject to argument on the basis of the text alone.

When we look beyond the text, the statutory and legislative history cited by the State convinces us that the legislature intended "by a restaurant" to modify only "served," with the result that "prepared" food may be subject to taxation as a meal no matter who prepares it. Although the statute's original definitions did not use the term "prepared," *see* Laws 1967, 213:1, the first amendment to the original meals tax statute expressly exempted prepackaged food sold in bulk in original, unopened containers from taxation as a meal. Laws 1967, 409:3. Since this exemption would have been unnecessary unless such prepackaged food would otherwise have been taxable, its enactment is evidence of the legislature's original intent to tax a prepackaged meal. *See Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. 202, 205, 400 A.2d 55, 57 (1979).

The legislature repealed this exemption when it revised the definitional section of the statute by Laws 1969, 287:7, which expressly provided that a vending machine was a restaurant. Ten years later

the legislature again provided an exemption by excluding from the category of taxable meals a beverage dispensed by a "single serving beverage machine where not used in conjunction with other food vending machines." Laws 1979, 272:2; RSA 78-A:3, X(c)(9) (Supp. 1983). From legislative history it is clear that both the department and the Senate understood that sales of soda prepackaged in cans had been taxable, and would have remained so without the amendment. N.H.S. JOUR. 1476–77, 1578–80 (1979). Again, this is evidence of original legislative intent that a meal may be "prepared" and taxable, even when the restaurant does no preparation, and merely serves prepackaged food.

The State's interpretation has the added merit of avoiding several practical problems that would arise on the taxpayers' view of the law. First, taxpayers who served otherwise taxable meals in combination with food prepared by others would naturally claim that the tax should be computed on something less than the total cost of the food as served, thus complicating accounting and enforcement. Second, the desire to avoid taxation would prompt the formation of corporations or other entities to engage in preparation of food to be sold at retail by others. The department would then undoubtedly face litigation to determine when the separation of preparer and server should be recognized and when it should not be. Therefore, administrative simplicity as well as legislative intent support the conclusion that a taxable meal need not be prepared by the restaurant that sells it.

The taxpayers try to counter these considerations by arguing that the department's interpretation will necessarily broaden the scope of the statute beyond anything the legislature could have intended. The taxpayers invoke that portion of the definition of "restaurant" providing that the term "includes . . . any . . . eating place or establishment where meals are served, even if the serving of a meal is not the primary function of the establishment such as . . . supermarkets." RSA 78-A:3, X(b) (Supp. 1983). They argue that if a supermarket is a restaurant under this provision, and if the sale of prepackaged food may be a taxable meal, then any sale of food by a supermarket will be taxable as a meal.

This argument assumes that if a supermarket can be treated as a restaurant for purposes of taxing some of its sales as meals, it must be treated as a restaurant as to all of its sales of food, with the result that for tax purposes all such sales will be taxable meals. We must reject this assumption, however, and the argument that rests upon it. The assumption ignores the fact that a supermarket's sales of food do not characteristically involve the element of service associated with a meal in a restaurant. It would therefore violate the

definition of "meal" to treat all of a supermarket's food sales as meals, simply because the supermarket contains a restaurant somewhere on its premises.

The department has recognized this. It has simply read the quoted definition of "restaurant" so as to avoid exempting meals from taxation merely because the restaurant that serves them is part of a supermarket. By like reasoning the department has refused to let the part that is a restaurant swallow the whole market for tax purposes. This interpretation is not only possible under the language, but necessary to avoid an absurd result. *See Linlee Enterprises, Inc. v. State*, 122 N.H. 455, 457, 445 A.2d 1130, 1131 (1982). The department's interpretation was therefore correct.

■ Since this interpretation avoids taxing all supermarket food sales as meals, there is no basis in statutory analysis to reject the legislature's clear intent to tax prepackaged meals when served by a restaurant, including a vending machine. We therefore conclude that the department was correct as a matter of statutory analysis in holding that the sale of prepackaged food is the sale of "prepared" food. Since the taxpayers do not dispute that as a matter of legal definition a vending machine "serves" food when it dispenses it for a price, it follows that the sale of prepackaged food from a vending machine is a taxable meal under the statute. RSA 78-A:3, X(a), (b), (c) (Supp. 1983).

This conclusion brings us to the second transferred question, about the constitutionality of taxing the vending machines' sales of prepackaged food. The taxpayers rest their position upon the admitted fact that the State does not tax the sale of the same prepackaged food when someone buys it from a shelf or display stand in a supermarket or restaurant. Each taxpayer argues that such disparate treatment is a denial of the equal protection of the laws under both State and National Constitutions.

PANCO rests its State equal protection claim on New Hampshire Constitution part I, articles 1 and 12. PANCO makes no claim that the taxing scheme violates a fundamental right or results in a suspect classification. It concedes that the rational basis test is therefore the proper standard for judging the constitutionality of the discriminatory economic practice in question. *See Boehner v. State*, 122 N.H. 79, 441 A.2d 1146 (1982).

While Cagan's also speaks in terms of equal protection, it rests its State claim principally on part II, articles 5 and 6 of the State Constitution, which have been interpreted to allow the classification of property for tax purposes, if the classification is supported by "just reasons." *Opinion of the Justices*, 115 N.H. 306, 308, 339 A.2d 450,

452 (1975). A just reason is the equivalent of a reasonable or rational basis. *See Opinion of the Justices,* 106 N.H. 202, 206, 208 A.2d 458, 461–62 (1965). Cagan's thus argues in effect that the lack of a rational basis to distinguish between the vending machine and supermarket sales results in an impermissible classification among taxpayers who sell prepackaged food. *See Opinion of the Justices,* 115 N.H. 306, 308–09, 339 A.2d 450, 452 (1975).

Hence, under each taxpayer's State constitutional claim the issue is whether there is a rational basis related to the object of the taxing statute for taxing the prepackaged food when "served" by a vending machine but not when sold from a supermarket shelf. The State argues that the disparate tax treatment of sales of the same pre-packaged food as between supermarkets and vending machines results from the rational application of that very element of the definition of a taxable meal that identifies it as "served," as well as "prepared." The State asserts that the supermarket does not "serve" prepackaged food when it merely places such food on shelves or other containers from which the customer directly picks it up. Conversely, the State argues that the vending machine does "serve" the prepackaged food when it dispenses it. Consistently with this position, the State also taxes prepackaged food when an employee of a supermarket's eating place hands it to a customer.

We are not persuaded. The attempt to see how the vending machine "serves" a candy bar in a way that the supermarket shelf does not exhausts ingenuity. The machine certainly does not make it easier for the customer to get his hands on the candy. In either case he must pick it up, but before he may pick it up from the machine he must pull a lever or push a button. This is not service; it is extra work.

The department falls back on the argument that the machine provides a service by making the candy available when and where the customer could not otherwise obtain it. But every store makes its goods available where they would not otherwise be, and if unavailability at odd hours were really the criterion, sales of food by convenience stores should become taxable in the wee hours. The claim of service simply will not wash.

■ Since we find no difference in service sufficient to distinguish between the sales, we find no rational basis to justify taxing the sales from the machine but not the sales from the supermarket shelf. Taxation of the sales from vending machines alone thus violates the guarantees of part I, articles 1 and 12, and part II, articles 5 and 6 of the State Constitution. Because we accept the position of the taxpayers on their claims under the State Constitution, we do

not reach the federal claims. *See State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983).

We now come to the third and fourth questions, posed by Cagan's alone. These questions raise the issue whether the department may collect a meals tax on food prepared by the taxpayer and sold during the years 1980 and 1981 from vending machines in the Concord police station and post office. Cagan's resists such taxation on two grounds. First, it maintains that all vending machine sales in the buildings in question are exempt from meals taxation as "meals served or furnished on the premises of any institution of the state, political subdivision of the state, or of the United States, to inmates and employees of the institutions." RSA 78-A:3, X(c)(3). Second, it takes the position that such sales were exempt under the terms of the department's own regulations in effect prior to October 15, 1981. It argues that any enforcement of the tax on sales made before the effective date of the amendment would be unconstitutionally retrospective.

On the analysis that follows, we answer transferred questions 3 and 4 by holding that the statute does not exempt the sales in question, but that the department's erroneous regulations rendered the taxation statute unenforceable as to sales made before the effective date of the amendment to the regulations.

The statutory exemption quoted above is limited to meals served or furnished on the "premises" of any "institution" of the State or National Government to the institution's "inmates and employees." There is no question that a police station or post office building is "premises." The issue of statutory construction, therefore, is whether they are premises of an "institution."

In addressing this issue, our touchstone is the language of the statute itself, read with its plain meaning where no contrary legislative intent is apparent. *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980); RSA 21:2. While the statute does not expressly define "institution," it does identify the character of the institutions that were in the legislative mind, as institutions with "inmates and employees." By the most common definition, an inmate is "a person confined or kept in an institution (as an asylum, prison or poorhouse)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1165 (1961). Since there is no indication in the language of the statute that the legislature intended anything but the common definition of "inmate" to apply, it follows that an institution having such inmates must have a confined or committed population.

The governmental departments housed in police stations or post offices do not qualify as institutions in this sense. While police

departments arrest and detain criminal defendants, the police normally hold the defendants only until they post bail or go to a county jail under court order. The defendants are arrested, but not committed to the police station. Hence a police department is not an institution charged with the care of a committed population.

■ The governmental departments that inhabit post offices do not have even a remote claim to be institutions housing inmates, and for that reason they do not qualify as "institutions," either. We conclude therefore that the statute does not exempt sales in police stations or post offices from the meals tax.

We nonetheless find merit in the taxpayer's argument that the department provided just such an exemption, by a regulation in effect until October 15, 1981. The taxpayer cites Department of Revenue Administration Regulation 701.09(c)(5) (repealed). Prior to the date mentioned, that regulation interpreted the statutory exemption as applying to meals "served on the premises of a unit of government . . . to inmates and employees." The regulation thus erroneously equated "premises of a unit of government" with "institution." It compounded this error by proceeding to give examples to illustrate the application of the regulation and statute. In one such example it mentioned town clerks and assessors, and employees of the State university, as employees of a "unit of government" as the regulation used that term. *Id.* Since such units of government do not have charge of committed inmates, it followed that such inmates were not a necessary feature of the premises of units of government that could qualify as institutions under the statute. That being so, under the regulation a police station or post office department without inmates is no less an "institution" than a tax collector's office without inmates. Anyone reading the regulation was therefore reasonably entitled to conclude that the exemption would apply to sales from vending machines in police stations or post offices, inmates or no inmates.

■■ Although the department's interpretation as reflected in the regulation was erroneously broad, it was nonetheless *prima facie* evidence of the proper interpretation of the exemption statute. RSA 78-A:2, II. Since the interpretation was entitled to such *prima facie* weight, the taxpayer could reasonably ask how the inconsistency between statute and regulation should be resolved. The answer lies in recognizing that so long as the interpretive regulation stood on the books, its inconsistency with the statute created an ambiguity about the scope of the exemption. When a taxing statute is ambiguous, the ambiguity will be construed against the government. *Appeal of John Denman*, 120 N.H. 568, 571, 419 A.2d 1084, 1087

(1980). There is no reason in principle why a different rule should apply when the ambiguity is caused by a regulation that the legislature has invested with *prima facie* soundness. In this case, therefore, we will apply the traditional rule construing the ambiguity of the exemption against the government and in favor of the taxpayer. It follows that the taxpayers were entitled to claim the exemption for as long as the erroneous regulation remained in force.

Finally, we must determine the effect of the regulation's amendment, which removed the inconsistency and resulting ambiguity by substituting a new regulation for the earlier one. The new regulation, effective on October 15, 1981, provided that "institution" would mean only a "prison, reformatory or mental hospital." This regulation properly excluded meals sold at police stations and post offices from the scope of the exemption.

Hence the sales in question after October 15, 1981, were taxable. The department, however, goes the further step of maintaining that the law as so clarified may be applied retroactively to tax all such sales during 1980 and 1981. Cagan's resists this by claiming that such an application would be unconstitutionally retrospective under part I, article 23 of the State Constitution.

■■ We agree with Cagan's that article 23 is controlling on this question. *See Estate of Kennett v. State*, 115 N.H. 50, 333 A.2d 452 (1975). The New Hampshire Constitution, part I, article 23, provides that "[r]etrospective laws are highly injurious, oppressive and unjust" and should not "be made . . . for the decision of civil causes . . . ." In applying this provision, this court stated long ago that a statute, or its application, that "'creates a new obligation . . . in respect to transactions . . . already past, must be deemed retrospective.'" *Woart v. Winnick*, 3 N.H. 473, 479 (1826) (quoting *Society v. Wheeler*, 2 Gallison 105 (reported at 22 F. Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13, 156))). On the basis of this very early formulation, then, it is obvious that the application of a taxing provision to a transaction that occurred before its enforceable date would be retrospective under article 23. That conclusion governs the disposition of this issue, in the taxpayer's favor.

It is true that *Estate of Kennett v. State supra* held that article 23 did not absolutely preclude retrospective application of a taxing statute when there was clear legislative intent so to apply it. But the court permitted retrospective application in that case only after a discussion of what the justices apparently viewed as a practical necessity and justification for it. It is not necessary to decide in this case what vitality may remain in the reasoning and holding of *Kennett*. It is sufficient to note that there is nothing in the present record

to justify a retrospective application of the taxing provision. Indeed, the record is devoid of any reason outweighing the general rule under article 23, that retrospective application should be prohibited.

■ It is also true that the result might well be different if the issue concerned the enforceability of a federal taxing statute under the National Constitution, since it has no provision wholly corresponding to article 23. *See* U.S. CONST. art. 1, § 10; 26 U.S.C.A. § 7805(b) (West 1967). *See generally* 2 DAVIS, ADMINISTRATIVE LAW TREATISE § 7:23 (2d ed. 1979). Under the State Constitution, however, we hold that part I, article 23 forbids taxation of any sales by Cagan's from machines in the two buildings if the sales occurred before October 15, 1981, but does not preclude taxation of sales made on and after that date.

*Remanded.*

All concurred.