Hillsborough
No. 85-301

CAGAN'S, INC.

v.

NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION

PANCO, INC.

v.

LLOYD M. PRICE, COMMISSIONER, & a.

June 5, 1986

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Charles A. DeGrandpre & a.* on the brief, and *James F. Raymond* orally), for the plaintiff Cagan's, Inc.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Daniel W. Sklar* on the brief and orally), for the plaintiff PANCO, Inc.

*Stephen E. Merrill*, attorney general (*David S. Peck*, assistant attorney general, and *Leslie J. Ludtke*, assistant attorney general, on the brief, and *Mr. Peck* orally), for the State.

JOHNSON, J.   This case presents an appeal from the Trial Court's (*Bean*, J.) denial of the plaintiffs' claims for refunds of meals taxes paid by them, based on vending machine sales of prepackaged food. We reverse and remand.

The plaintiffs, Cagan's, Inc. and PANCO, Inc., both operate food and beverage vending machines. In March 1982, the department of revenue administration audited Cagan's and, pursuant to RSA chapter 78-A, assessed an additional meals tax and interest in the amount of $19,010.84. The assessment pertained to sales of candy and sales to employees of governmental institutions for the period January 1, 1980 through January 31, 1981. Cagan's filed a petition for reconsideration pursuant to RSA 78-A:12 (Supp. 1985). At an October 1982 hearing before the assistant commissioner, Cagan's challenged, *inter alia*, the tax on the sale of candy and other pre-packaged items as violative of its equal protection rights. A revised

assessment of $16,970.23 was issued and Cagan's paid $3,318.32 of that amount, which covered the tax on sales to governmental establishments. Cagan's did not pay the remainder, which represented the tax on candy sales and interest. An appeal to the superior court followed.

PANCO commenced its action in 1982 by requesting a refund for taxes paid on the sale of prepackaged items from the third quarter of 1980 through the third quarter of 1981. This request was denied, and the department subsequently denied PANCO's petition for reconsideration. PANCO appealed to the superior court.

Cagan's appeal of the revised assessment and PANCO's appeal of the department's denial of its petition for reconsideration were consolidated in the superior court. In an interlocutory transfer to this court, we ruled that the application of the meals tax to the sales of prepackaged food from vending machines, but not to similar sales from supermarkets and other stores, violated the plaintiffs' equal protection rights as guaranteed by part I, articles 1 and 12, and part II, articles 5 and 6, of the New Hampshire Constitution. *Cagan's, Inc. v. Dep't of Rev. Admin.*, 126 N.H. 239, 246, 490 A.2d 1354, 1359–60 (1985). We then remanded the case to the superior court.

At an April 1985 pre-trial conference in the superior court, the department asserted that it was not required to grant a refund to the plaintiffs. No factual evidence was submitted, and no evidentiary hearing was requested. The superior court subsequently issued an order denying the plaintiffs' claims, stating that Cagan's had paid no taxes on the sale of prepackaged goods and that PANCO was not entitled to a refund because RSA 78-A:10 (Supp. 1985) does not authorize refunds for illegally collected taxes. The plaintiffs filed a motion for reconsideration, along with several affidavits concerning, *inter alia*, the economic burden of the meals tax and the taxes allegedly paid by Cagan's. The court denied the motion, and this appeal followed.

The department contends that RSA 78-A:10 (Supp. 1985) does not authorize refunds of erroneously or illegally collected taxes, but does permit refunds for taxes improperly computed by the operator. RSA 78-A:10 states:

> "If the department determines that, through error, an operator has made an overpayment of taxes or interest or a penalty, the department shall credit the amount of the overpayment on any tax imposed by this chapter that is then due or to become due from the operator. Upon request, the department shall order any overpayment to be refunded to the operator, or to his successors, administrators, executors or assigns."

■ The starting point for determining legislative intent is the language of the statute itself. *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980). Before 1969, RSA 78-A:10 provided that the department would credit "any tax, interest or penalty [that] ha[d] been paid more than once, or ha[d] been erroneously or illegally collected or computed . . . ." Laws 1967, 213:1. The department asserts that when the legislature amended the statute in 1969, it intended to eliminate an operator's right to seek a refund for taxes "erroneously or illegally collected" and to retain only the right of an operator to receive refunds for taxes overpaid due to the operator's computational error.

■ We cannot find, however, any indication of a legislative intent to do more than simplify RSA 78-A:10. We believe that the 1969 amendment, which used the term "through error," was intended to retain the scope of the original provision. In *Johnson & Porter Realty Co. v. Commissioner of Revenue Administration*, 122 N.H. 696, 699, 448 A.2d 435, 437 (1982), we equated taxes assessed in "error" to "taxes . . . erroneously or illegally assessed." No attempt has been made to change the term "through error" in the face of our interpretation of it and, therefore, we assume that this interpretation met with the legislature's approval. *See Amoskeag Trust Co. v. Preston*, 107 N.H. 330, 333, 222 A.2d 158, 161 (1966). Accordingly, we construe RSA 78-A:10 to permit an operator to receive a refund for taxes erroneously or illegally collected or computed, within three years from the date the return was due. Further, RSA 71-A:39 (Supp. 1985) requires that the department pay interest at the rate of ten percent per annum upon that amount. In view of the statutory remedy available to the plaintiffs, they need not resort to any common law refund theories.

■■ In order to be entitled to a refund under a tax statute, the party seeking the refund must have borne the economic burden of the tax. *See U.S. v. Jefferson Electric Co.*, 291 U.S. 386, 400–02 (1934). The department contends that the plaintiffs failed to meet their burden of proving that they bore the economic burden of the tax. *See Saltzman v. New York State Tax Commission*, 101 A.D.2d 910, 911, 475 N.Y.S.2d 610, 611 (App. Div. 1984). The meals and rooms tax statute generally places the economic burden of the meals tax upon the customer. RSA 78-A:7, I (Supp. 1985) provides that the operator "shall demand and collect the tax from the . . . purchaser [of a meal,]" and retain three percent of the taxes due as compensation for collecting them, RSA 78-A:7, III.

Nevertheless, the plaintiffs contend that the statute provides an exception to the general rule by permitting an operator to compute

taxes due by taking a fixed percentage of total meals revenues "exclusive of the taxes collected." RSA 78-A:7, IV (Supp. 1985); *see* N.H. ADMIN. RULES, Rev. 705.01(a). They assert that because vending machine operators cannot calculate and assess meals taxes on each meal, RSA 78-A:7, IV shifts the economic burden of the tax from the customer to the operator by allowing the operator to refrain from passing the tax on to the customers. We disagree.

■ We see no evidence that the legislature, by enacting RSA 78-A:7, IV (Supp. 1985), intended to shift the economic burden of the tax. The provision is simply an optional method for computing the amount of taxes due which alleviates the necessity of keeping detailed records of taxes collected. The operator, however, is still expected to collect the tax from its customers. The provision expressly states that the tax will be computed "exclusive of the taxes collected[,]" and that "[a]ny balance of the tax remaining in possession of the operator may be retained by him." *Id.*

Alternatively, the plaintiffs contend that the discriminatory application of the meals tax put them at a competitive disadvantage and prevented them from imposing the tax on their customers. They assert that in order to impose the tax on their customers, the plaintiffs would have been forced to raise the price of prepackaged goods and would have experienced decreased sales. The department argues, however, that the plaintiffs computed the tax so as to exclude taxes collected from total revenues, and retained the commissions. Whether these computations were calculated on the basis of the plaintiffs' collection of the taxes from their customers, or merely were based on the requirements of RSA 78-A:7, IV (Supp. 1985) and N.H. Admin. Rules, Rev. 705.01(a), is unclear on the record before us. The plaintiffs provided no evidence concerning the economic burden issue at the April 1985 pre-trial conference, but did attempt to offer evidence on this issue in their motion for reconsideration. Although, on our preceding legal analysis, it does not appear that there is a substantial likelihood that the plaintiffs will be able to demonstrate that they did bear the economic burden, they should have the opportunity to develop their cases if they can.

■■ We will uphold a trial court's decision on a motion for reconsideration absent an abuse of discretion. *See Redlon Co. v. Corporation*, 91 N.H. 502, 506, 23 A.2d 370, 374 (1941). The record before us indicates that at the time of the pre-trial hearing, the plaintiffs were unaware that the economic burden of the tax would be an issue. Additionally, the plaintiffs assert that the department had represented that they would be entitled to a refund if their chal-

lenge to the legality of the tax was successful, and that the plaintiffs are entitled to a finding concerning this issue. Given these assertions, as well as the extraordinarily complex nature of the proceedings, we hold that the trial court erred in denying the plaintiffs' motion for reconsideration.

■ Additionally, the plaintiffs state they they must have borne the economic burden of the tax in order to have had standing to challenge it in *Cagan's, Inc. v. New Hampshire Department of Revenue Administration*, 126 N.H. at 239, 490 A.2d at 1354, and thus that the issue was necessarily determined in the first action. We disagree. The plaintiffs did not necessarily have standing as taxpayers in the first action; they could have had standing as agents for collection. *See Silver Brothers, Inc. v. Wallin*, 122 N.H. 1138, 1140, 455 A.2d 1011, 1012 (1982).

In remanding this case once again to the trial court, we note an additional insufficiency in the record. The court ruled that Cagan's paid no taxes on the sale of prepackaged goods, yet the plaintiffs offered evidence in their motion for reconsideration that the ruling was incorrect. Such evidence should be considered by the trial court in determining whether a refund is required.

■ Finally, we conclude that Cagan's initial challenge to the constitutionality of the meals tax during the October 1982 hearing was equivalent to a request for a refund of taxes paid on the sale of prepackaged goods between January 1980 and October 1982. A refund claim for that time period thus has been properly presented. Cagan's also filed a refund claim to cover the period from October 1982 to March 1985; this claim, however, is not before us.

■ On remand, the trial court must determine, on the basis of the evidence before it, whether Cagan's paid taxes on the sale of prepackaged goods. The plaintiffs must satisfy their burden of proof by demonstrating that they bore the economic burden of the tax. Mere assertions that the discriminatory nature of the tax prevented them from passing the tax on to their customers are insufficient; the plaintiffs must demonstrate that the tax was not collected from their customers.

*Reversed and remanded.*

All concurred.