Merrimack
No. 2007-419

NORTH COUNTRY ENVIRONMENTAL SERVICES

v.

THE STATE OF NEW HAMPSHIRE

Argued: January 17, 2008
Opinion Issued: March 14, 2008

16

*Brown, Olson & Gould, P.C.*, of Concord (*Bryan K. Gould* and *Philip R. Braley* on the brief, and *Mr. Gould* orally), for the plaintiff.

*Kelly A. Ayotte*, attorney general (*Maureen D. Smith*, senior assistant attorney general, on the brief and orally), for the defendant.

GALWAY, J. The plaintiff, North Country Environmental Services (NCES), appeals an order of the Superior Court (*Lynn*, C.J.) ruling in favor of the defendant, State of New Hampshire (State), on the parties' cross-motions for summary judgment. We affirm.

This case is the latest involving a landfill site NCES operates in Bethlehem. *See generally Appeal of Town of Bethlehem*, 154 N.H. 314 (2006); *N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606 (2004); *N. Country Envtl. Servs. v. Town of Bethlehem*, 146 N.H. 348 (2001). We recite only those facts relevant to decide the issues in this appeal.

Beginning in 2002, NCES applied, pursuant to RSA 72:12-a (2003), to the New Hampshire Department of Environmental Services (DES) for property tax exemptions for the pollution control facilities at its Bethlehem landfill. *Appeal of Town of Bethlehem*, 154 N.H. at 317. Eventually, DES found that certain pollution control facilities at the landfill qualified for exemptions. *Id.* The Town appealed, arguing, in part, that DES had erred in finding that NCES' pollution control facilities qualified for the exemptions. *Id.* at 318-22. We disagreed and concluded that DES' findings were supported by the record. *Id.* at 322. Therefore, under RSA 72:12-a, NCES was permitted to exempt certain pollution control facilities at its landfill from property taxation.

In 2006, the legislature amended RSA 72:12-a. RSA 72:12-a (Supp. 2007). The amended statute states that the paragraph exempting pollution control facilities from taxation does not apply to privately-owned landfills or ancillary facilities located at such landfills. RSA 72:12-a, I. The amended statute applies to taxes assessed on or after April 1, 2007. RSA 72:12-a, V. In June 2006, NCES brought a petition in the superior court arguing that

RSA 72:12-a, as amended, is unconstitutional, and asking that the State be enjoined from applying it to NCES. Ruling on cross-motions for summary judgment, the superior court ruled in favor of the State and upheld the amended statute. This appeal followed.

On appeal, NCES contends that RSA 72:12-a, as amended, is unconstitutional because it: (1) exceeds the legislature's taxing authority as defined in Part II, Articles 5 and 6 of the New Hampshire Constitution; and (2) denies NCES equal protection of the law under Part I, Articles 1, 2, 10 and 12 of the New Hampshire Constitution. In addition, NCES contends that even if the amended statute does not violate the constitution, the exemptions it obtained prior to the amendment's passage are not extinguished by the amendment. We address each issue in turn.

Prior to 2006, RSA 72:12-a provided, in relevant part:

> Any person, firm or corporation which builds, constructs, installs, or places in use in this state any treatment facility, device, appliance, or installation wholly or partly for the purpose of reducing, controlling, or eliminating any source of air or water pollution shall be entitled to have the value of said facility and any real estate necessary therefor, or a percentage thereof determined in accordance with this section, exempted from the taxes levied under this chapter for the period of years in which the facility, device, appliance, or installation is used in accordance with the provisions of this section.

RSA 72:12-a, I (2003). The 2006 amendment left the above-quoted text unchanged, but added the sentence: "This paragraph shall not apply to privately-owned landfills or ancillary facilities located at such landfills." RSA 72:12-a, I (Supp. 2007).

NCES first argues that RSA 72:12-a, as amended, violates the legislature's taxing authority as set out in Part II, Articles 5 and 6 of the State Constitution. NCES contends that the statute creates a class of property—pollution control facilities—but treats owners of property within that class differently. Because, according to NCES, the amended statute differentiates between owners of property, the statute violates the legislature's taxing authority.

■ "In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds." *Baines v. N.H. Senate President*, 152 N.H. 124, 133 (2005) (quotation omitted). "In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution." *Id.* (quotation omitted).

■ Part II, Article 5 of the New Hampshire Constitution provides that the legislature has the power "to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within [New Hampshire.]" N.H. CONST. pt. II, art. 5. "Part II, Article 5 . . . requires that all taxes be proportionate and reasonable, equal in valuation and uniform in rate, and just." *Appeal of Town of Bethlehem*, 154 N.H. at 322. "Taxes must be in due proportion, so that each individual's share, and no more, shall fall upon him." *Starr v. Governor*, 148 N.H. 72, 74 (2002) (quotation omitted).

■■ Part II, Article 6, in turn, provides that "[t]he public charges of government, or any part thereof, may be raised by taxation, upon polls, estates, and other classes of property . . . ." N.H. CONST. pt. II, art. 6. "Pursuant to this article, the legislature has the broad authority to classify types of property for taxation so long as the classification is sufficiently inclusive to constitute a distinctive class." *Starr*, 148 N.H. at 74. "The legislative power to classify property includes the power to exempt property from taxation." *Smith v. N.H. Dep't of Revenue Admin.*, 141 N.H. 681, 687 (1997). "This power is not unlimited, however, and the court will invalidate a classification if it is unreasonable or if its purpose is to discriminate." *Starr*, 148 N.H. at 74. In other words, "This provision grants the legislature broad power to declare property to be taxable or non-taxable based upon a classification of the property's kind or use, but not based upon a classification of the property's owner." *Smith*, 141 N.H. at 686.

■ "Together, part II, articles 5 and 6 permit the disproportionality inherent in taxes levied upon classes of property, so long as there is uniformity and proportionality within each class." *Id.* (quotation and ellipsis omitted). "Strictly speaking, the rule of equality and proportionality does not apply to the selection of the subjects of taxation, provided just reasons exist for the selection made." *Id.* (quotation omitted). In this context, just reasons are the equivalent of a reasonable or rational basis. *Id.* at 687. We have stated that:

> It has long been our opinion that to establish the rules by which each individual's just and equal proportion of a tax shall be determined is a task of much difficulty, and a very considerable latitude of discretion must be left to the legislature on the subject. Within the limits of this discretion, as to the selection of proper subjects of taxation and the proportion of the tax that shall be laid on each subject, the authority of the legislature is, without question, supreme.

*Id.* (quotation and brackets omitted). Finally, an exemption is proper under the legislature's taxing power so long as the legislature relies upon a distinction between the taxable and non-taxable property that is a reasonable one, in the sense that it may be deemed to be just. *Id.*

As noted, NCES contends that the relevant class of property delineated by the statute is pollution control facilities. Under the prior version of RSA 72:12-a, we upheld tax exemptions for various pollution control facilities on the theory that the purpose of the statute was to encourage industry to construct such facilities. *See, e.g., Appeal of City of Berlin*, 131 N.H. 285, 289 (1988); *Appeal of Town of Hampton Falls*, 126 N.H. 805, 808-09 (1985). Thus, by acknowledging that the legislature sought to encourage the construction of pollution control facilities, we acknowledged that the statute exempted the class of property composed of pollution control facilities. Therefore, we agree with NCES that, prior to its amendment, the statute was intended to grant tax exemptions to that class of property.

Out of this broader class of exempt property, however, the amendment to RSA 72:12-a has removed those pollution control facilities located at landfills. The legislature has, therefore, now classified pollution control facilities at landfills as subject to taxation, while classifying pollution control facilities located elsewhere as exempt.

■ We pause briefly to make two interrelated points. First, although the amendment to RSA 72:12-a refers to "privately-owned landfills," we do not find that the reference imperils the statute. RSA 72:12-a is a taxing statute and is, therefore, concerned with such properties as may be subject to tax. Publicly owned landfills, like other public properties, are exempt from taxation. *See* RSA 72:23 (Supp. 2007); RSA 53-B:7 (2003). Accordingly, while RSA 72:12-a explicitly refers to a group by a type of ownership— private, as opposed to public—that reference does not, in itself, violate the constitutional prohibition on classification by ownership. *Smith*, 141 N.H. at 686. Second, while NCES points out that at present there are only two privately-owned landfills in the state, we are not concerned with the number of properties within a particular group, but with whether the distinction drawn between the taxable and nontaxable properties is a proper one, in that it is sufficiently inclusive to create distinctive classes. *Starr*, 148 N.H. at 74.

With these considerations in mind, we turn to NCES' arguments. NCES contends that classifying pollution control facilities at landfills as taxable, while classifying those elsewhere as exempt, is unconstitutional for two reasons. First, NCES contends that under RSA 72:12-a, as amended, the relevant class of property is still all pollution control facilities, and such facilities are no different whether installed at a landfill or at another

location. Because, according to NCES, the pollution control facilities themselves do not differ depending upon their location, the State may not tax them differently when at landfills. This argument, however, is premised upon the conclusion that the statute calls for an evaluation of pollution control facilities in the abstract, divorced from the context of the land they serve. We do not believe that such an application was intended by the legislature.

We construe RSA 72:12-a to give full effect to the legislative intent of the statute. *Appeal of Town of Hampton Falls*, 126 N.H. at 808. The plain language of the statute states that the exemption for pollution control facilities does not apply to landfills and their ancillary facilities. It does not tax, or exempt from tax, pollution control facilities because of their size, shape, effectiveness, or virtually any other criteria relative to the pollution control facilities themselves. In fact, the only criterion relative to the facilities themselves is that they have the purpose to treat any source of air or water pollution. RSA 72:12-a, I. Therefore, under the statute, as long as its purpose is to treat pollution, a pollution control facility is entitled to the exemption, unless associated with a landfill. Thus, it is the use of the land served by the pollution control facilities that determines whether a pollution control facility is exempt. Accordingly, we do not agree that the amended statute is concerned with all pollution control facilities in the abstract. It is, instead, concerned with the use of land upon which the pollution control facilities sit. Logically then, we must also disagree with NCES' contention that the relevant class is all pollution control facilities. To conclude that the relevant class is pollution control facilities generally would be to ignore the distinction made by the legislature that the use of land as a landfill, or as something else, determines whether a pollution control facility thereon is entitled to claim the exemption.

NCES argues that *Cagan's, Inc. v. New Hampshire Department of Revenue Administration*, 126 N.H. 239 (1985), where we declared unconstitutional a tax laid upon prepared meals dispensed by vending machines, but not upon identical items sold in supermarkets, *id.* at 241, supports its claim that the pollution control facilities should be evaluated without reference to the land. In *Cagan's*, the only criterion for distinguishing between a taxed and untaxed meal was whether the meal was "served." *Id.* at 242. We concluded that because there was no difference in "service sufficient to distinguish between the sales," *id.* at 246, there was no reason to tax the sales of these identical items differently. Based upon this logic, NCES contends that because the pollution control facilities are identical items, there is no difference between them sufficient to justify differing tax treatment. We find *Cagan's* distinguishable.

The statute in *Cagan's* either taxed or exempted identical meals based merely upon the way they were served, and not because of any distinction relevant to those delivering the meals. *Id.* Thus, the classification was not related to the meals or the deliverers, either of which was a potentially proper subject of classification. Instead, the classification was based upon an arbitrary distinction having nothing to do with the kind or use of the property being taxed or exempted. Here, the classification is based upon whether a pollution control facility is or is not part of a landfill. Thus, while the pollution control facilities here, like the meals served in *Cagan's*, may be the same, unlike in *Cagan's*, the distinction in taxation is related to the use of property. Accordingly, we do not agree that *Cagan's* supports the claim that the pollution control facilities here should be evaluated without reference to the land, because the exemption of the facilities expressly depends upon the use of the land upon which they are placed.

We note that the legislature has made similar decisions with respect to the classification of other properties. For example, persons with disabilities are entitled to exempt from property taxation the value of improvements made to their residential property, within certain limitations, when those improvements assist them with their disability. RSA 72:37-a (2003). Thus, if a handrail, ramp or other device is installed in the home of a disabled person for the purpose of aiding that person, the person may exempt the value of the device. However, the value of an identical device installed in a different home, but not for the purpose of assisting a disabled person, would not be exempt. There is no difference in the devices installed; they are identical. However, the use of the property, *i.e.*, in the service of a disabled or non-disabled person, determines whether the exemption is available.

The same logic is at work in RSA 72:12-a. While particular pollution control facilities may not, by themselves, differ, their installation on a parcel used as a landfill, or for some other purpose, determines whether they are eligible for the exemption. To accept NCES' position that the pollution control facilities may be considered as a class of property separate from the land upon which they sit, would be to require a similar evaluation with respect to devices installed as aids to the disabled. We do not believe the legislature intended any such result. For these reasons, we conclude that it is the land upon which a pollution control facility sits, and the use of that land, that, in the first instance, determines whether the value of the pollution control facility may be exempted. Because the legislature has authority to classify property as taxable or non-taxable based upon its use, and because it has declared pollution control facilities taxable when appended to land used as a landfill, we disagree with NCES' contentions

that under the amended statute pollution control facilities, generally, are the relevant class, or that they might be considered separately from the land they serve.

■ Second, NCES argues that treating pollution control facilities differently depending upon their location is tantamount to classifying owners or taxpayers for differing treatment. While the legislature may not classify owners for differing taxation, see Smith, 141 N.H. at 686, we conclude it has not done so here. Under RSA 72:12-a, as amended, whether pollution control facilities are taxable or non-taxable does not depend upon who owns them. Instead, the pollution control facilities are deemed either taxable or exempt by the land upon which they are located, and by the use of that land. If they reside on land used as a landfill, they are taxed; if on land not used as a landfill, they are exempt. Thus, the statute differentiates between uses of property and not owners of property.

■ Moreover, RSA 72:12-a, as amended, does not state that its exemption is unavailable to those persons or entities who own landfills. In fact, the State concedes in its brief that NCES, a landfill owner, may obtain exemptions for the pollution control facilities installed at any other non-landfill properties it owns in the state. Thus, it is not owners, but land uses, that have been classified for tax purposes. Furthermore, as pointed out by the State at oral argument, should NCES sell its landfill, the new owner would be subject to taxation on that landfill in the same manner as NCES. As such, it is irrelevant, for purposes of the statute, who owns the property. We conclude that RSA 72:12-a, as amended, classifies pollution control facilities as taxable or exempt based upon land use, and, therefore, does not classify owners for differing taxation.

NCES points to our decision in Opinion of the Justices, 118 N.H. 343 (1978), in support of its contention that the classification here is ownership based. There, the legislature sought our opinion on whether a proposed statute that would impose a tax upon electric generating plants with a capacity of 500,000 kilowatts or more would be constitutional. Id. at 345. At that time, only Seabrook Station would have been subject to the tax. Id. at 345-46. We concluded that because the end product of all electricity generating plants is the same regardless of their size, and because no valid reason had been presented to justify classifying electric plants solely by size, the tax would not be constitutional. Id. at 346. According to NCES, our conclusion in Opinion of the Justices was that the seemingly neutral classification of plant capacity was, in reality, a classification of taxpayers, and, it contends, such is also the case here. But see Opinion of the Justices, 117 N.H. 749, 755-56 (1977) (ruling that although they handled identical materials, classifying larger capacity oil terminals differently from smaller

ones for tax purposes was permissible because legislature could conclude that larger facilities·pose greater risk).

■ We believe NCES overlooks the portion of *Opinion of the Justices* most relevant here. Though we ruled that a tax imposed merely by an evaluation of capacity would not be constitutional, we noted that:

> It is true that different sources of energy, that is, water, coal, oil and nuclear, are used to produce the end product. Absent certain necessary information, we cannot give an opinion as to whether electric generating plants fueled by nuclear energy possess enough differing characteristics to be classified separately for the purpose of imposing an ad valorem State tax on their properties. In the absence of a just reason for so doing, it is clearly established that a State ad valorem tax on all electric generating plants must be at the same rate and by the same mode of valuation.

*Opinion of the Justices*, 118 N.H. at 346. Thus, although we lacked information sufficient to give a definitive ruling, we concluded that the legislature could tax electricity generating plants differently based upon the fuel they used. That is, the use of the generating plant property, *i.e.*, as a nuclear plant or coal-fired plant, could, potentially, justify differing treatment, but the mere volume of the fungible end product, electricity, in the absence of a valid reason, could not. Here, the distinction between taxed and untaxed pollution control facilities relies upon a difference in the use of the land upon which those facilities sit, not based upon the pollution control facilities themselves. It is not, therefore, a seemingly neutral way to tax owners differently; it is a distinction premised upon land use. For the above reasons, we conclude that RSA 72:12-a creates a classification of property for tax purposes—landfills, which are not entitled to exemption for pollution control facilities, and other properties, which are—which is sufficiently inclusive to constitute a distinctive class, and that it does so based upon land use and is, therefore, valid under the constitution. *Smith*, 141 N.H. at 686.

■ Having determined the relevant classes created by RSA 72:12-a, as amended, we must now determine whether the legislature has just reasons which reasonably promote some proper object of public welfare or interest, *Opinion of the Justices (School Financing)*, 142 N.H. 892, 900 (1998), for its decision to tax pollution control facilities at landfills differently from pollution control facilities elsewhere. We conclude that it does. The legislature has previously stated that landfills are the least preferred method of waste disposal. *See* RSA 149-M:3 (2005). The legislature has also

stated a desire to reduce the use of landfills as a method of waste management. RSA 149-M:2, I (2005). Moreover, in adopting the amendment to RSA 72:12-a, the legislature declared that giving incentives to landfills is contrary to the public interest as expressed in RSA 149-M:3, and reaffirmed that landfills are the least preferred method of waste disposal. *See* Laws 2006, 282:3. In order to support its determination that landfills are a disfavored land use, the legislature has opted to remove from landfills an exemption available to other properties, thus discouraging their establishment and operation. However, merely because the legislature does not wish to encourage landfills, does not mean that it wishes to discourage the installation and use of pollution control facilities generally. Thus, it has chosen to remove an exemption for landfills and their ancillary facilities and not pollution controls as a whole. We conclude that discouraging the use of landfills is a just reason relating to a proper object of public interest for differing treatment. Accordingly, for the above reasons, we conclude that the amendment to RSA 72:12-a does not violate the legislature's taxing authority under Part II, Articles 5 and 6.

NCES next argues that RSA 72:12-a, as amended, violates equal protection as guaranteed by Part I, Articles 1, 2, 10 and 12 of the New Hampshire Constitution. According to NCES, without a rational basis for doing so, RSA 72:12-a, as amended, denies owners of landfills the same tax treatment available to all other owners of pollution control facilities in New Hampshire. Further, NCES argues that the rationale proposed for the amendment to RSA 72:12-a, while phrased as being in the public interest, is only a pretext for unconstitutional discrimination.

Equal protection protects an entity from state action which discriminates against it by subjecting it to taxes not imposed upon others of the same class. *Verizon New England v. City of Rochester*, 156 N.H. 624, 630 (2007). Thus, the equal protection guarantee is essentially a direction that all persons similarly situated should be treated alike. *Verizon New England v. City of Rochester*, 151 N.H. 263, 270 (2004). Equal protection, however, does not demand that a statute apply equally to all persons or require things which are different in fact to be treated in law as though they were the same. *Id.*

NCES argues that RSA 72:12-a, as amended, creates an unconstitutional classification of taxpayers. This classification does not involve a suspect class; nor does it affect a fundamental right. *Id.* Thus, in order to determine whether NCES' right to equal protection is being violated, we apply the rational basis test, under which legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Id.* Because NCES is challenging the

legislation, it has the burden to prove that the classification is arbitrary or without some reasonable justification. *Id.*

As we have stated above, the classification created by the amendment to RSA 72:12-a is between landfills and other properties with pollution control facilities. Such a classification is based upon a difference in the use of the land, a legitimate basis for differing tax treatment. *See Smith,* 141 N.H. at 686. Thus, the relevant consideration is whether NCES is treated similarly to those similarly situated to it. More to the point, to satisfy the demands of equal protection, we must determine whether under RSA 72:12-a, the class of landfills is treated equally, and whether the class of other properties with pollution control devices is treated equally. We conclude that they are. All properties in the class of landfills are treated the same throughout the state, in that RSA 72:12-a does not apply to them, and no landfill or landfill owner is singled out for discriminatory treatment. All other properties with pollution control facilities in the state are also treated equally because they are all entitled to the exemption in RSA 72:12-a, subject to the application and evaluation process.

Additionally, similar to Part II, Articles 5, and 6, equal protection does not require absolute equality of burden in the case of tax exemptions, provided that the statute at issue advances a public purpose and is properly within the legislature's discretion in acting for the welfare of the state. *Appeal of Town of Bethlehem,* 154 N.H. at 324. Thus, where a tax exemption is at issue, a public benefit conferred by the exemption may render it constitutional. *Id.* Here, the statute confers a public benefit by both providing incentives for industry to construct pollution control facilities and by denying an exemption that would otherwise benefit a disfavored use of property. Because RSA 72:12-a confers a public benefit, we conclude that RSA 72:12-a, as amended, does not violate equal protection, as the classification drawn by the statute is rationally related to a legitimate state interest.

As noted, however, NCES argues that the rationale supporting the amendment to RSA 72:12-a—that tax exemptions for landfills are contrary to the public interest—is "little more than an incantation contrived to cloak rank discrimination in shabby respectability." Further, NCES contends that because the hierarchy of waste disposal methods outlined in RSA chapter 149-M lists landfills as part of the state's "integrated waste management plan," it is irrational to discriminate against them, while at the same time acknowledging their place in the overall waste disposal plan. We disagree.

In exercising its power of taxation, the legislature decides the wisdom and practicality of each tax to be imposed free from interference by

the judiciary. *Estate of Kennett v. State*, 115 N.H. 50, 53 (1975). The wisdom, effectiveness, and economic desirability of such a statute is not for us to decide. *Smith Insurance, Inc. v. Grievance Committee*, 120 N.H. 856, 863 (1980). Nor may we substitute our judgment for that of the legislature. *Id.*

The legislature has declared that it has "concern" about the disposal of solid waste in landfills. RSA 149-M:2 (2005). Moreover, the legislature has determined that landfills, while part of the overall waste management plan, are to be used only when all other waste disposal options are exhausted. RSA 149-M:3. To reduce the availability of tax exemptions for the operation of landfills, thus making disposal there more expensive and, as a result, less desirable, is a reasonable rationale for altering the taxation of landfills and their ancillary facilities, and does not single out NCES for discriminatory treatment. While NCES contends that such treatment is irrational in that it potentially undermines the established waste management plan, the wisdom or desirability of the legislation is not for us to decide. *See Smith Insurance*, 120 N.H. at 863. We are not persuaded that NCES has demonstrated that RSA 72:12-a, as amended, violates equal protection.

Finally, NCES contends that despite the amendment to RSA 72:12-a, the exemption determinations it obtained for its pollution control facilities prior to the effective date of the amendment remain in effect. Based solely upon the language of the statute, NCES argues that only exemption determinations made by DES after the amendment's effective date are precluded, and, therefore, the superior court erred in rendering summary judgment in favor of the State on this issue. The State, in turn, contends that principles of sovereign immunity prevent NCES from receiving the relief it seeks. Alternatively, the State argues that the language of the statute does not support NCES' position.

While the State contends that NCES' argument is barred by sovereign immunity, we do not address that argument because even if we assume it is not barred, NCES does not prevail. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Town of Bethlehem*, 154 N.H. at 319. When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* In construing tax statutes, we are guided by the well-settled principle that a tax exemption is construed to give full effect to the legislative intent of the statute. *Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002).

"It is elemental that determination of the rights of plaintiff to an exemption from taxation is statutory. The existence and extent of exemptions depends on legislative edict." *E. Coast Conf. of the Evangelical Covenant Church of America v. Town of Swanzey*, 146 N.H. 658, 661 (2001) (quotations omitted). As we have stated, the intent of the amendment to RSA 72:12-a was to remove an exemption from landfills and ancillary facilities to discourage their establishment and operation. Consistent with the principle of giving full effect to this intent, we conclude that the exemptions previously granted under RSA 72:12-a to landfills do not survive the amendment. As of the effective date of the amendment, the exemption provided by RSA 72:12-a, by its plain terms, does not apply to landfills. RSA 72:12-a, I. Thus, the exemption may no longer be claimed for landfills because the statute granting the exemption no longer applies. Because the statute granting the exemption does not apply to landfills, to hold that a landfill may continue to claim an exemption would be to provide an exemption to which it is not entitled under the statute.

For the reasons stated, we conclude that the 2006 amendment to RSA 72:12-a violates neither the legislature's taxing authority nor equal protection, and that the statute extinguished any right to claim an exemption for taxes assessed on or after April 1, 2007, for pollution control facilities located at landfills, regardless of when any exemption determinations had been obtained.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.