Rockingham
No. 85-295

BRADLEY REAL ESTATE TRUST

v.

EVERETT V. TAYLOR, COMMISSIONER,
DEPARTMENT OF REVENUE ADMINISTRATION

August 12, 1986

*Sanders and McDermott P.A.*, of Hampton (*Wilfred L. Sanders, Jr.*, and *Lawrence M. Edelman* on the brief, and *Mr. Edelman* orally), for Bradley Real Estate Trust.

*Stephen E. Merrill*, attorney general (*David S. Peck*, assistant attorney general, on the brief and orally), for the State.

BROCK, J. This is an appeal from a decision of the Superior Court (*Gray*, J.) nullifying an additional tax assessment imposed upon Bradley Real Estate Trust. The New Hampshire Department of Revenue Administration (the department) claims that the superior court erred because "gross business profits" should include profits paid out by a real estate investment trust (REIT) as dividends to its shareholders. We hold that the superior court correctly applied RSA 77-A:1, III(a) (Supp. 1975) and therefore affirm the decision of the superior court.

The Bradley Real Estate Trust (Bradley), a REIT established in accordance with the provisions of 26 U.S.C.A. § 856 (1982 and Supp. 1986), owns real property located in Derry. Bradley is considered a corporation for federal income tax purposes, and as such annually files a United States corporate income tax return. It also files a New Hampshire business profits tax return.

In 1980, the department performed an audit on the business profits tax returns filed by Bradley for the fiscal years ending August 31, 1977, 1978, and 1979. As a result of the audit, Bradley was assessed an additional $13,437 plus interest. The department based its assessment on the determination that Bradley should have

included the dividends distributed to its shareholders in its gross business profits. Bradley requested a hearing before the commissioner of revenue administration pursuant to RSA 77-A:13 (1970 and Supp. 1985) to dispute this determination. After the hearing, the director of the audit division upheld the assessment, asserting that the dividends paid deduction cannot, for purposes of the New Hampshire business profits tax, be applied prior to calculating taxable income. Thereafter, Bradley filed an appeal for a trial *de novo* in the superior court. RSA 77-A:14 (Supp. 1985). The department appeals from the decree of the Superior Court (*Gray*, J., acting on the report of the Master, *R. Peter Shapiro*, Esq.) that declared the assessment null and void.

The principal issue on appeal is how the court should interpret the definition of "gross business profits" in the New Hampshire business profits tax statute, RSA chapter 77-A, as the term applies to REITs. The department claims that the trial court erred: (1) in construing the definition of "gross business profits" for a real estate investment trust so as not to include dividends paid by the trust to its shareholders; (2) in denying the department's requested finding of fact number 4; and (3) in admitting evidence of the intent of a draftsman of the business profits tax statute.

Gross business profits serve as the starting point in the calculation of "taxable business profits," to which the business profits tax is applied. In general, the definitions of gross business profits, applicable to the different types of business organizations, rely upon the federal income tax form. *See* RSA 77-A:1, III(a) to (e) (Supp. 1985). Gross business profits for a REIT are defined as "the amount shown as 'taxable income before net operating loss deduction and special deductions'" on the trust's United States corporate income tax return. RSA 77-A:1, III(a) (Supp. 1975). Line 28 on the federal form is labeled "Taxable income before net operating loss deduction and special deductions (subtract line 27 from line 11)."

The trial court interpreted RSA 77-A:1, III(a) (Supp. 1975) literally to mean that gross business profits equal whatever amount appears on line 28 of the federal return. The department disputes this interpretation.

The department begins with the assumption that the business profits tax was intended to tax all business organizations alike. In the case of a corporation, the legislature intended the tax to be imposed on the entity's taxable income before any deductions. *See* RSA 77-A:1, III(a) (Supp. 1975). For most corporations the superior court's literal analysis is proper because line 28 represents a corporation's taxable income before deductions. The REIT, however, receives unique treatment under the federal corporate tax

system. The special deduction mentioned on line 28 is not available to a REIT. Instead, the REIT receives a deduction for dividends paid to its shareholders which conversely is denied to other corporations. The department asserts that the superior court's literal application of RSA 77-A:1, III(a) (Supp. 1975) to the REIT ignores the legislative intent because the REIT's deduction for dividends paid is taken on line 26 of the federal form. Line 28 of the REIT's federal tax form, therefore, provides its taxable income after, instead of before, deductions. Under the court's interpretation, a REIT, unlike other business organizations, can avoid paying any business profits tax on income that is paid out as dividends to shareholders.

It is this result that the department asserts is unintended. The taxpayer, on the other hand, maintains that the statute is clear and unambiguous on its face, leaving no room for interpretation, and as such should have been and was explicitly followed by the taxpayer in preparing its New Hampshire business profits tax return.

 We agree with the taxpayer. The starting point in the interpretation of a statute is the language of the statute itself. *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980). When the language used in a statute is plain and unambiguous, its meaning may not be modified by construction. *Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979). In such a case, "we need not look beyond the statute itself for further indications of legislative intent." *Dover Professional Fire Officers Assoc. v. City of Dover*, 124 N.H. 165, 169, 470 A.2d 866, 869 (1983) (quoting *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980)). "[L]egislative intent is to be found not in what the legislature might have said, but rather in the meaning of what it did say." *Corson, supra* at 23, 397 A.2d at 642.

 Interpreting the relevant provisions of the business profits tax statute in light of these principles of statutory construction, we hold that the trial court did not err in construing the definition of gross business profits for a REIT as not including dividends paid by the REIT to its shareholders. RSA 77-A:1, III(a) (Supp. 1975). The statute is very clear. Gross business profits equal the "taxable income before net operating loss deduction and special deductions" on the United States corporate income tax form. RSA 77-A:1, III(a) (Supp. 1975). Line 28 of that form is labeled "[t]axable income before net operating loss deduction and special deductions." Thus, RSA 77-A:1, III(a) (Supp. 1975) directs the taxpayer, in preparing its New Hampshire business profits tax return, to transcribe the amount shown on line 28 of the federal form. This is precisely what Bradley did.

■ The department attempts to counter the taxpayer's literal interpretation argument with a line of cases that it asserts prohibits us from strictly construing a tax statute. *See Cagan's Inc. v. Dep't of Rev. Admin.*, 126 N.H. 239, 243–44, 490 A.2d 1354, 1357–58 (1985); *Caskey v. State*, 93 N.H. 438, 442, 43 A.2d 768, 770 (1945); *Kimball v. Potter*, 89 N.H. 234, 235, 196 A. 272, 273 (1938). We do not read these cases as preventing us from literally interpreting an unambiguous tax statute. These cases merely caution us not to construe tax exemption laws with rigorous strictness *as a matter of course. Gilford v. State Tax Commission*, 108 N.H. 167, 168, 229 A.2d 691, 693 (1967).

■■ The department asserts that a further basis for interpreting RSA 77-A:1, III(a) (Supp. 1975) is the serious constitutional questions of uniformity raised by the superior court's analysis. The department cites *White v. Lee*, 124 N.H. 69, 77–78, 470 A.2d 849, 854 (1983) for the proposition that a statute will not be construed to be unconstitutional where it is susceptible to a construction rendering it constitutional. The department, however, has failed to establish the threshold requirement for applying this rule, that being the existence of an ambiguity that necessitates judicial interpretation. Because we find the statute unambiguous, there is no justification for judicial modification. *Appeal of Public Serv. Co. of N.H.*, 125 N.H. 46, 52, 480 A.2d 20, 24 (1984). Furthermore, our reading of the statute fails to disclose any obvious unconstitutionality.

The department further alleges that the trial court's denial of its requested finding of fact number 4 is clearly erroneous. The department requested that the trial court find:

> "4. The amounts shown on line 28 of the plaintiff's United States corporation tax returns for the taxable years ending August 31, 1977, August 31, 1978, and August 31, 1979 are the plaintiff's 'real estate investment trust taxable income' for each respective taxable year, not the plaintiff's 'taxable income' before net operating loss deduction and before special deductions for each respective taxable year."

We find no error in trial court's refusal to grant this request. Line 28 of the United States corporate tax return is labeled "[t]axable income before net operating loss deduction and special deductions." The department fails to cite any authority indicating that a REIT would take its net operating loss deduction before line 28. Further, the special deduction mentioned on line 28 is not available to the REIT. *See* 26 CFR 1.857-2(a) (1985). The fact that a REIT deducts

the amount of income it has distributed to its shareholders on line 26 does not mean that the amount shown on line 28 is not its taxable income. Thus, the trial court's refusal to adopt a statement which says that the amount shown on line 28 of the plaintiff's federal tax return is *not* "'taxable income' before net operating loss deduction and before special deductions for each respective taxable year" is not clearly erroneous.

The department's final argument is that the trial court erroneously admitted, and relied upon, evidence of the personal intent of the draftsman of the business profits tax statute. The department claims that the trial court erred because the draftsman did not clearly communicate this information to the legislature when it considered the bill for enactment and because much of his testimony consisted of his personal recollection of unrecorded proceedings that took place fifteen years ago.

As a special category of extra-legislative source material, the views of draftsmen are not generally considered appropriate grounds upon which to base statutory interpretation. 2A C. SANDS, STATUTES AND STATUTORY CONSTRUCTION § 48.12 (rev. 4th ed. 1984); *see People v. Graham*, 55 N.Y.2d 144, 151, 432 N.E.2d 790, 794 (1982) (views of a statute's draftsman totally excluded from statutory interpretation process); *cf. Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979) ("[p]ersonal recollections by a member of an informal committee are . . . inadmissible as history to affect the interpretation of a statute."); *State v. Mullen*, 119 N.H. 703, 709, 406 A.2d 698, 701 (1979) (in interpreting statutes the court cannot "rely on any statements made by legislators *after* passage of the bill regarding the 'motives of members . . . in enacting [the] law.'" (emphasis added)).

In *Hurley v. Public Service Company of New Hampshire*, 123 N.H. 750, 755, 465 A.2d 1217, 1220 (1983), we recognized that there is not necessarily a correlation between the understanding and intent of a draftsman and the understanding and intent of the legislature. Further, the draftsman's views may be unreliable because of his inclination to testify as to what he intended the statute to say rather than to give an objective analysis of what the statute actually says. R. DICKERSON, THE INTERPRETATION AND APPLICATION OF STATUTES 156 (1975).

 Thus, we hold that personal recollections of the draftsman of a bill should not be considered for statutory interpretation purposes. Although the trial court in this case erred in allowing the draftsman of the business profits tax statute to testify as to his personal recollections, it constituted harmless error. The trial court

interpreted an unambiguous statute literally. Although consistent with, and a confirmation of, the literal interpretation, the draftsman's recollection of unrecorded proceedings and his working drafts of the statute were not necessary to the result reached by the trial court.

The department also argues that the trial court erred in allowing into evidence an article co-authored by the draftsman and published in the New Hampshire Bar Journal. A review of the record reveals that although the department had made a continuing objection to the testimony of the draftsman's intent, it specifically answered "[n]o objection" in response to the taxpayer's introduction of the article into evidence. Thus, we hold that the department has waived its right to appeal the issue. *See State v. Nadeau*, 126 N.H. 120, 125, 489 A.2d 623, 626 (1985).

Finally, we note that new legislation now requires that a "real estate investment trust . . . be subject to tax at the entity level." RSA 77-A:1, I (Supp. 1985) (effective July 3, 1985).

*Affirmed.*

All concurred.