Hillsborough-northern judicial district
No. 93-653

## ALICE C. TRUE

v.

## FLEET BANK–NH

July 19, 1994

*Bruce N. Finkle*, of Nashua, by brief and orally, for the plaintiff.

*Sullivan & Gregg, P.A.*, of Nashua, (*Michael F. Merra* and *Francis L. Cramer* on the brief, and *Mr. Merra* orally), for the defendant.

THAYER, J. The defendant, Fleet Bank-NH, appeals an order of the Superior Court (*Barry*, J.) granting judgment for the plaintiff, Alice C. True. We affirm.

In lieu of testimony, the parties submitted an agreed statement of facts to the trial court. On March 9, 1989, the plaintiff's ex-husband, Richard True, caused two checks, totalling $82,608.48, to be issued, each payable to both the plaintiff and her attorney, James Kalled, for settlement of the plaintiff's interest in the marital estate. Both checks were drawn on the Indian Head National Bank, to which the defendant is the successor by merger.

Kalled indorsed both checks "payable to James Kalled for Alice True," and deposited them into his trust account. The parties do not dispute that the drawee bank, the defendant in this action, lacked written authorization from the plaintiff empowering Kalled to negotiate the checks on her behalf. The collected proceeds of both checks have, since March 9, 1989, remained in an interest-bearing trust account and have been the subject of separate litigation between the plaintiff and Kalled.

In the instant action, the trial court found that because the two instruments were not payable in the alternative, and because Kalled was not authorized to sign for the plaintiff, the indorsements of both Kalled and the plaintiff were required. *See* RSA 382-A:3-116 (1961) (repealed, amended, and reenacted as RSA 382-A:3-110(d) (Supp. 1993) (effective Jan. 1, 1994)). Thus, the court ruled, the defendant converted the two instruments, RSA 382-A:3-419(1) (1961) (repealed, amended, and reenacted as RSA 382-A:3-420(a) (Supp. 1993) (effective Jan. 1, 1994)), and was liable to the plaintiff for the face amount of the instruments, RSA 382-A:3-419(2) (1961) (repealed, amended, and reenacted as RSA 382-A:3-420(b) (Supp. 1993) (effective Jan. 1, 1994)).

On appeal, the defendant first argues that the trial court erred in ruling that a conversion occurred. In spite of the incomplete indorsements, the defendant asserts that Kalled was merely acting as the plaintiff's authorized representative when he indorsed the two checks, *see* RSA 382-A:3-403(1) (1961) (repealed, amended, and reenacted as RSA 382-A:3-402(a) (Supp. 1993) (effective Jan. 1, 1994)), and that, in any event, the funds reached their intended destination; namely, an interest-bearing trust account for the benefit of the plaintiff. Thus, in light of the "commercial reasonableness" of its actions, the defendant would have us hold that damages should not flow from its payment on the incomplete indorsements. We disagree.

The agreed statement of facts explicitly states that "[a]t the time the checks were deposited . . . the drawee bank [lacked] any

written authorization from Mrs. True authorizing Mr. Kalled to negotiate the checks on her behalf." These facts provide no supplementary indication that the plaintiff clothed Kalled with implied authority to negotiate the checks on her behalf. "When one does business with another through the latter's agent, it is necessarily to be understood that the agent's authority to bind the principal is not greater than that actually given." *Security Fence Co. v. Association*, 101 N.H. 190, 194, 136 A.2d 910, 913 (1957) (quotation omitted). On the facts before us, we concur with the trial court's ruling that Kalled lacked the authority to sign for the plaintiff.

■ Nor are we persuaded by the defendant's reliance on the supposed "commercial reasonableness" of the transaction or that the funds necessarily reached their intended destination. When the defendant accepted the two-party check without the plaintiff's indorsement, it deprived her of her rights of ownership and placed the funds beyond her control. We fail to understand how the defendant can characterize as "commercially reasonable" the discharge of the plaintiff's interest in the checks without her consent. Similarly, it cannot be said that the monies reached their intended destination when one intended beneficiary, the plaintiff, was deprived of any incident of ownership. We therefore find no error with the trial court's determination that a conversion occurred.

■ The defendant, citing case law from other jurisdictions, next argues that the trial court erred by failing to consider various common law and equitable defenses. RSA 382-A:1-103 (1961) does permit the consideration of common law principles of law and equity unless they are "displaced by the particular provisions of this chapter." The defendant's liability for conversion in this case was governed by former RSA 382-A:3-419(2), which clearly distinguishes the measure of liability of drawee converters from that of non-drawee converters, leaving the availability of common law defenses open only to non-drawee converters. "[T]he measure of the drawee's liability *is* the face amount of the instrument. In any other action . . . the measure of liability is *presumed to be* the face amount of the instrument." RSA 382-A:3-419(2) (1961) (emphasis added). Comment 4 to this section leaves no doubt that "[i]n the case of the drawee, . . . the presumption [of liability for the face value of the instrument] is replaced by a rule of absolute liability." In light of this language, we hold that any common law defenses that might have been available to the defendant were displaced by the strict liability standard set forth in former RSA 382-A:3-419(2).

■ We acknowledge that the absolute liability standard applied to the defendant in this case has since been replaced by a presumptive liability standard. *See* RSA 382-A:3-420(b) & comment 2 (Supp. 1993) (effective Jan. 1, 1994). Nevertheless, this recent revision to the Uniform Commercial Code is inapplicable to the interpretation of the prior statute, as the prior statute is unambiguous. *Cf. Bradley Real Estate Trust v. Taylor, Commissioner,* 128 N.H. 441, 446–47, 515 A.2d 1212, 1216 (1986) (upholding the trial court's literal interpretation of an unambiguous predecessor statute).

Lastly, the defendant argues that awarding judgment against the defendant in the full face amount of the two checks has the effect of penalizing the defendant in contravention of statutory and common law. *See* RSA 382-A:1-106(1) (1961); RSA 507:16 (Supp. 1993); *Vratsenes v. N.H. Auto, Inc.,* 112 N.H. 71, 73, 289 A.2d 66, 68 (1972). The defendant attempts to bolster this argument by reiterating that the funds reached their intended destination and by directing us to language in the trial court's order stating that the defendant had "failed to heed the mandatory provisions of RSA 382-A:3-116 [and] must now pay the *penalty* therefore." (Emphasis added.)

We hold that the literal application of this unambiguous statute is not a "penalty," and we have already ruled that the proceeds of the two checks did not reach their intended destination. That the award of damages in this case does not penalize the defendant is evidenced by the fact that the defendant has not been precluded from bringing an appropriate civil action, or joining a pending civil action, to protect its rights and prevent unjust enrichment.

■ In addition, the trial court's characterization of the defendant's damages as a "penalty" does not compel reversal. We do not understand that term, when read in context, to imply that punitive sanctions were being awarded. Moreover, "[a]ssuming *arguendo* that the court's reasoning was faulty, we may nonetheless affirm the result if a valid alternative ground for it exists." *Long v. Long,* 136 N.H. 25, 28, 611 A.2d 620, 622 (1992). Here, despite its unfortunate word choice, the trial court correctly applied the relevant statute to an agreed upon set of facts and arrived at the level of damages prescribed by the statute. Based upon our review of the record as submitted to the lower court, *see Masse v. Commercial Union Ins. Co.,* 136 N.H. 628, 631–32, 620 A.2d 1041, 1044 (1993), the defendant is not entitled to a contrary result as a matter of law.

We note that a slight discrepancy exists between the trial court's award of $82,680.48, and the parties' stipulation that the two checks totalled $82,608.48. Neither party has asked us to address this dis-

crepancy. As such, we uphold the dollar amount included in the trial court's order.

*Affirmed.*

HORTON, J., did not sit; the others concurred.